**YAKIMA NEWSPAPER GUILD, LOCAL NO. 27 OF the NEWSPAPER GUILD, AFL–CIO, Plaintiff,**

v.

**REPUBLIC PUBLISHING COMPANY, d/b/a Yakima Herald-Republic, Defendant.**

No. 3945.

United States District Court, E. D. Washington.

April 11, 1974.

Morris G. Shore, Velikanje, Moore & Shore, Yakima, Wash., for defendant; Wesley M. Wilson, Yakima, Wash., of counsel.

Thomas K. Cassidy, Hafer, Cassidy & Price, Seattle, Wash., for plaintiff.

## MEMORANDUM OPINION

NEILL, Chief Judge.

This action is before this Court on plaintiff employee's petition to, enforce an arbitration award under a collective bargaining agreement. Each party seeks summary judgment. The applicable portions of the collective bargaining agreement are set forth in the appendix hereto.

The facts giving rise to the arbitration are not in dispute. Plaintiff was laid off by defendant employer in a reduction of force program. Plaintiff contends her layoff was contrary to the seniority provisions of the agreement (Section 9) and that the "transfer out of classification" violated Sections 3, 4 and 5(b) thereof. The arbitrator ruled against plaintiff on her grievance as to seniority but held with her on the "transfer" grievance.

Defendant asserts that it agreed to arbitrate only the Section 9 (seniority) grievance and that the arbitrator violated his duty and exceeded his authority in considering plaintiff's grievance under Sections 3, 4 and 5(b).

Arbitration was commenced pursuant to a letter from a union official to the selected arbitrator wherein the arbitrator was advised that:

"[defendant] and [plaintiff] request your service as an arbitrator in a dispute over the layoff of Mary Hersey, the grievant. The Guild has charged that in reducing the work force in January, 1973, with respect to Mrs. Hersey, the company violated Section 9 of the contract by retaining an employee junior to her in classification. . . . the company has denied there was a violation of Section 9. . . ."

At the arbitration hearing the union, over objection of defendant, submitted evidence on the "transfer out of unit" grievance. The arbitrator received such evidence under a reservation as to the scope of the arbitration.

In its post-hearing brief defendant partially acceded to the arbitrator's earlier suggestion that he be permitted to consider and rule on all grievances by stating in the brief:

" . . . with the understanding the arbitrator has only these four issues before him, and that he treat them as though they had been referred to him in accordance with Section 7, and that the arbitrator's jurisdiction to hear and determine these questions is to be found only in the express language of Section 7, . . . the company will withdraw its objection . . . and agrees the issues are before the arbitrator in accordance with the procedure set forth in Section 7."

The arbitrator reviewed the history of the negotiation leading to the collective bargaining agreement and ruled that he was authorized to consider all the grievances. Defendant contends that by so doing he manifested an infidelity to his duties.

The starting point for deciding arbitration questions is in the "steelworkers trilogy" of United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960), and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960). In these cases the Supreme Court set out certain guidelines for courts' involvement in labor arbitration matters under federal law.

The scope of review of an arbitrator's award is greater than in a suit to compel arbitration. United Steelworkers of America v. Enterprise Wheel & Car Corp., *supra*. A court may review the question of arbitrability and it is not necessary that a party refuse to arbitrate all issues if an objection to the arbitrability of some claims is properly preserved throughout the proceedings. Local 719, American Bakery and Confectionary Workers of America, AFL-CIO v. National Biscuit Co., 378 F.2d 918 (3d Cir. 1967).

The issue before this Court is the scope of review of an arbitrator's decision that an issue is arbitrable under a collective bargaining agreement. To decide this issue it must be determined initially whether the question of arbitrability was submitted to the arbitrator.

Plaintiff contends that the question of the scope of arbitration was submitted to the arbitrator and that his decision thereon is subject to only limited review. Defendant asserts that a determination as to the scope of arbitrability is subject to judicial review, even after it has been submitted to an arbitrator.

It is clear from the record that defendant did not submit the "transfer" issue to arbitration by the initial letter of submission nor did it agree to such submission at the hearing. However, in an ambiguous post-hearing brief defendant, while appearing to maintain its objections to the arbitrator deciding any issue other than the seniority grievance, did by the language hereinbefore quoted submit to the arbitrator the question of the arbitration of other grievances. Defendant then argued that the arbitrator should adopt its interpretation of Section 7.

In Torrington Co. v. Metal Products Workers Union Local 1645, 362 F.2d 677 (2d Cir. 1966), the Second Circuit indicated the scope of the arbitrator's authority is subject to judicial review and that his decision should not be accepted when it is clear that he derived his authority from sources outside the collective bargaining agreement. *Torrington* has received a great deal of criticism and was for the most part rejected by the Ninth Circuit in Holly Sugar Corp. v. Distillery, Rectifying, Wine & A. W. I. U., 412 F.2d 899 (9th Cir. 1969). In *Holly Sugar Corp.* the Court accepted the Supreme Court's admonition from the trilogy that if an award represents a plausible interpretation of the agreement, judicial inquiry ceases.

The problem in this type of case is that it is really impossible to separate questions of arbitrability from decisions on the merits. Given the preference for arbitration and the quick resolution of industrial disputes, the balance seems to swing in favor of only limited review of an arbitrator's decision of arbitrability —if that question was submitted to him.

In Ficek v. Southern Pacific Company, 338 F.2d 655 (9th Cir. 1964), cert. denied, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280, the question of whether the issue of scope of arbitrability had been submitted to the arbitrator was involved. The court recognized that a party may not be bound by an award, the submission of which he had not agreed to, but it also observed that an agreement to submit to arbitration may be implied.

The effect of Section 7 of the agreement on the arbitrator's authority was submitted to the arbitrator in defendant's post-hearing brief and defendant therein asserted the reasons for its interpretation of that section. Such a submission should constitute a submission of the question to the arbitrator. Ficek v. Southern Pacific Co., *supra*. Therefore, the decision of the arbitrator as to the arbitrability of the disputes should be reviewed in the same manner as a dispute on the merits.

Another question is whether the arbitrator may resort to outside sources to interpret the collective bargaining agreement. *Torrington, supra,* indicates that he could not. However, that case has received considerable criticism on this point and the Ninth Circuit has held that an arbitrator may utilize outside sources to interpret an agreement. Anaconda Co. v. Great Falls Mill & Smeltermen's Union #16, 402 F.2d 749 (9th Cir. 1968).

In general an arbitrator's award " . . . draws its essence from the collective bargaining agreement". United Steelworkers of America v. Enterprise Wheel and Car Corp., *supra,* 363 U.S. 593 at 597, 80 S.Ct. 1358 at 1361, 4 L.Ed.2d 1424, and should be upheld if the award represents a plausible interpretation of the contract in the context of the parties' conduct. United Steelworkers of America v. Enterprise

Wheel & Car Corp., *supra,* and *Holly Sugar, supra.* In this case the question was submitted to the arbitrator and he was entitled to consider the history of the negotiations. Anaconda Co. v. Great Falls Mill & Smeltermen's Union, *supra.* After the arbitrator considered the history of the negotiations he concluded that he could hear the other claims. Certainly he was not unfaithful to his duties, the essence of his opinion was drawn from the contract, and his interpretation was a plausible interpretation of the contract in light of all the factors he considered. His decision should be upheld. *Enterprise Wheel & Car Corp., supra,* and *Holly Sugar, supra.*

■ Plaintiff also seeks the recovery of attorneys' fees. Given the ambiguity of the procedural posture of this case and of the formulation of issues to be decided by the arbitrator, the defendant cannot be held to be intransigent or in bad faith in pressing its claims. Under these circumstances attorneys' fees will not be awarded.

Plaintiff's Motion for Summary Judgment is granted and defendant's Motion for Summary Judgment is denied.

Counsel may submit a form of judgment in accordance herewith.

### APPENDIX

The applicable portions of the Collective Bargaining Agreement are as follows:

*Section 3.* The Employer recognizes the Guild as the exclusive bargaining representative for all employees covered by this contract.

*Section 4.* This contract covers all employees in the unit described in the Certification of Representative in Case No. 19–RC–4523 dated May 23, 1967, more particularly:

All employees in the Employer's editorial department, advertising department, circulation department, accounting department and maintenance department excluding full and part-time mail room employees, confidential secretaries, all other employees, supervisors, guards and watchmen as defined in the Act.

*Section 5.* (b) It is the intent of the contracting parties that the Guild's representation rights shall not be lost through the introduction of new methods, processes, or equipment, and any employee assigned to work in departments now represented by the Guild shall be covered by this contract and represented by the Guild unless the individual is in a newly created supervisory position.

*Section 7.* (a) It is mutually agreed that all claims or grievances arising under or by virtue of the terms of this contract may be prepared and submitted in writing to the Employer by the Guild for adjustment.

(b) Any grievance concerning the construction of any phrase, clause, paragraph, subsection or section of this contract which cannot be otherwise agreed upon may upon motion by the Guild be referred to arbitration as hereinafter set forth:

7. The Board of Arbitration shall have no power to add to, subtract from, alter or vary in any way the express terms of this contract nor imply any restriction or burden against either party that has not been assumed by the express language of the contract, nor shall the Board of Arbitration have any jurisdiction to hear and determine any question involving an assignment of work nor any question not involving an express provision of this contract. Any failure or refusal to abide by the terms of this section shall constitute a waiver by the party who breaches the contract of rights created by this section, and if the Guild is the affending (sic) party, it shall lose the right to have any issues arbitrated under this section, and if the Employer is the affending (sic) party the Guild shall be released from its commitment not to strike.

9. Reductions in the size of the work force and renewal of this contract and differences arising out of contract interim openings shall not be subject to arbitration.

*Section 9.* (a) During the first six months of employment layoffs to reduce the force shall be the absolute perogative (sic) of the Employer. Thereafter, the Employer shall lay off first, within their classifications, those employees who have been employed for the shortest periods of time except in those cases where general consideration of overall job performance, merit or ability favors retention of such employees over employees who have been employed for longer periods of time. When rehiring, the Employer shall give preference to former employees if they are available within three weeks and their desire for re-employment is known to the Employer and who have been laid off within the preceding six months. As among such employees, those who have been laid off the shortest period of time shall be afforded the greatest preference.