391 A.2d 1173.

Joseph L. Jacinto *et al. v.* Jerome P. Egan *et al.*

SEPTEMBER 12, 1978.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

908

KELLEHER, J.   This is an appeal by the Cumberland Teachers' Association (the association) from a judgment of the Superior Court vacating an arbitration award made pursuant to the terms of a collective bargaining agreement effective during the years 1974-76 (the agreement) between the Cumberland School Committee (the school committee) and the association. The arbitrator had approved a request by a Cumberland teacher for a 1-year leave of absence without pay which had been previously denied by the school committee.

In March 1975, Paula McKeown, a chemistry teacher with 3 years' experience in the Cumberland school system, applied to the Superintendent of Schools (the superintendent) for a leave of absence without remuneration for the 1975-76 academic year. The leave was sought to pursue a graduate degree in Molecular Biology at the University of Connecticut, a program which requires full-time study and is not offered either part-time or at night. The advanced academic credits

were necessary for further certification as a teacher by the State Department of Education when her provisional certification expired at the end of 5 years.

The agreement contains detailed provisions setting forth the conditions under which Cumberland schoolteachers could be granted leaves of absence. Article XX, entitled "Sabbatical Leave," provides for 1-year leaves with pay for advanced study in an approved college or university program. Leaves under this provision are reserved for teachers with at least 5 years' teaching experience in the Cumberland system. Article XXI, entitled "Long-Term Leaves of Absence," provides for leaves due to a teacher-exchange program, the Peace Corps, Vista, military duty, and pregnancy. Article XIX is entitled "Leaves of Absence" and lists seven different categories,[1] including section "E. Temporary Leaves of Absence." This section authorizes absence for a variety of events, including such occurrences as religious holidays, educational conferences, and participation in any legal proceeding which is related to the teacher's employment. Section E contains a catch-all provision which reads:

> "2. Teachers may be allowed additional time off for other personal reasons when such requests are considered valid by the Superintendent."

Ms. McKeown sought her leave pursuant to this latter provision.

When the school committee denied the request, the association invoked the grievance procedure set forth in Article XXII of the agreement on behalf of Ms. McKeown. Article XXII was described as the "exclusive remedy" for the resolution of grievances.[2] Binding arbitration, before an arbitrator

---

[1] The other six categories deal with sick leave, absence due to illness in the family, absence due to deaths and funerals, leaves for military training, jury duty, and personal business days.

[2] A grievance was defined broadly to include any claim by any party to the agreement that there has been a "violation, misinterpretation or inequitable application of the provisions of the agreement."

selected by the American Arbitration Association, was the final process for the disposition of grievances.

After a hearing on the merits in July 1975, the arbitrator made the following award:

> "That the grievance is arbitrable.

> "That Miss McKeown be granted a year's leave without remuneration to attend the University of Connecticut for Advanced Studies.

> "In addition, the School Committee has no obligation to keep the teacher(s) after the return of Miss McKeown in September, 1976."

Thereupon, the school committee brought a complaint in the Superior Court for a declaratory judgment to determine the rights of all the parties involved under the agreement and a motion to vacate the award pursuant to G.L. 1956 (1968 Reenactment) §28-9-18. In a decision dated September 23, 1976, the trial justice held that the arbitrator had, in effect, amended the agreement by granting Ms. McKeown a leave to which she was not entitled. Accordingly, he vacated the award on the ground that the arbitrator exceeded his authority.

The association is now before us on an appeal from the Superior Court judgment, contending that the trial justice exceeded his authority in vacating the arbitrator's award and in refusing to confirm it.

Before reaching the merits of the controversy, we must first address the issue of mootness. The school committee contends that Ms. McKeown did not return to the Cumberland school system after leaving for a year of study. The school committee, however, has not met its burden of establishing mootness on the record, in view of the conflicting statements in the briefs and at oral argument concerning Ms. McKeown's whereabouts and the reasons for her failure to return to her former position. There is, therefore, a real justi-

ciable controversy before us on which we may make an effective determination. *DiPrete* v. *Vallone*, 70 R.I. 286, 289, 38 A.2d 769, 770 (1944).

Judicial authority to review or vacate arbitration awards is statutorily prescribed. Section 28-9-18 authorizes the judiciary to vacate an arbitration award only in three limited instances:

"(a)   When the award was procured by fraud.

"(b)   Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter submitted was not made.

"(c)   If there was no valid submission or contract, and the objection has been raised under the conditions set forth in §28-9-13."

The trial justice, in vacating the award, ruled that the arbitrator "exceeded his powers." He relied in particular on a provision of the agreement (Article XXII) which prohibited the arbitrator from making any decision "amending, modifying, adding to or subtracting from the provisions of this agreement." In his view the arbitrator, in effect, created a "new classification of leave."

In *Belanger* v. *Matteson*, 115 R.I. 332, 355, 346 A.2d 124, 137-38 (1975), *cert. denied*, 424 U.S. 968, 96 S. Ct. 1466, 47 L. Ed. 2d 736 (1976), we noted that the judicial branch must not overlook the fact that an arbitration award is the decision of an extra-judicial tribunal which the parties themselves have created and by whose judgment they have mutually agreed to abide. The fact that the arbitrator misconstrued the contract or the law is no ground for striking down his award.

"A judicial reversal of an arbitration award based solely on the reviewing court's disagreement with the arbitrators' interpretation of the contract would not

only nullify the bargain made by the parties but also threaten the strong public policy that favors private settlement of grievance disputes arising from collective bargaining agreements." *Id.* at 355-56, 346 A.2d at 138.

The statutory authority to vacate an arbitration award where the arbitrators "exceeded their powers"[3] does not authorize a judicial re-examination of the relevant contractual provision. *National Railroad Passenger Corp.* v. *Chesapeake & Ohio Railway*, 551 F.2d 136 (7th Cir. 1977); *Amicizia Societa Navegazione* v. *Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805 (2d Cir.), *cert. denied*, 363 U.S. 843, 80 S. Ct. 1612, 4 L. Ed. 2d 1727 (1960). The courts are in agreement that an alleged misconstruction of the contract is not a sufficient basis for vacating an arbitration award. *National Railroad Passenger Corp.* v. *Chesapeake & Ohio Railway*, 551 F.2d at 142. Indeed, awards premised on "clearly erroneous" interpretations of the contract have been affirmed where the result was rationally based upon the contract. *I/S Stavborg* v. *National Metal Converters, Inc.*, 500 F.2d 424, 432 (2d Cir. 1974). The proper role for the courts in this regard is to determine whether the arbitrator has resolved the grievance by considering the proper sources — "the contract and those circumstances out of which comes the 'common law of the shop' " — but not to determine whether the arbitrator has resolved the grievance correctly. Gorman, *Labor Law* 585 (1976), *quoting Safeway Stores* v. *American Bakery & Confectionery Workers International Union, Local 111*, 390 F.2d 79, 82 (5th Cir. 1968). As long as the award "draws its essence" from the contract and is based upon a "passably plausible" interpretation of the contract, it is within the arbitrator's authority and our review must end. *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424, 1428 (1960); *Safeway Stores* v. *American Bakery & Confectionery Workers International Union, Local 111*, 390 F.2d at 83.

---

[3]E.G., 9 U.S.C. §10(d)(1970); G.L. 1956 (1968 Reenactment) §28-9-18(b).

The arbitrator basically relied upon three provisions of the contract in finding that certain provisions of the collective bargaining agreement had been violated when the grievant was denied a 1-year leave of absence without pay. First, Article XIX (Leaves of Absence), section E(2), of the agreement provides that "[t]eachers may be allowed additional time off for other personal reasons when such requests are considered valid by the Superintendent." Second, the opening paragraph of Article XIX recognizes the right of the school committee to make and enforce reasonable rules to ensure that there is no abuse of leave benefits. The committee agreed to discuss these rules with the teachers' association prior to their promulgation and agreed that they would be subject to a test in arbitration concerning their reasonableness and their fair and impartial administration in individual cases.[4] Finally, the arbitrator relied upon Article XXV of the agreement, which provides that the regulations and practices in effect relating to conditions of employment shall continue in force, unless the agreement provides for the contrary. The arbitrator found that the committee had not promulgated any rules relating to leaves but had established a pattern and practice of arbitrarily granting leaves (to coach a football team, to run a political campaign, etc.). The arbitrator apparently accepted the association's argument that the arbitrary granting of leaves without any rules or regulations violated the reasonableness requirement of Article XIX. Accordingly, he granted the grievant a 1-year leave without remuneration.

We believe the decision of the arbitrator "draws its essence" from the contract and is sufficiently "grounded in

---

[4]This paragraph of Article XIX provides:

"The Association recognizes the right of the Committee to make and enforce reasonable rules to ensure that there is no abuse of leave benefits. The Committee agrees to discuss any such proposed rules with the Association prior to their implementation. It is understood and agreed that the rules promulgated by the Committee are subject to a test in arbitration as to their reasonableness, if challenged by the Association, and as to their fair and impartial administration in individual cases."

the contract" to be within the scope of his authority. *United Steelworkers of America* v. *United States Gypsum Co.,* 492 F.2d 713, 731-32 (5th Cir.), *cert. denied,* 419 U.S. 998, 95 S. Ct. 312, 42 L. Ed. 2d 271 (1974). Absent a manifest disregard of the contractual provisions, or a completely irrational result, the courts have no authority to vacate the arbitrator's award. *Belanger* v. *Matteson,* 115 R.I. at 356, 346 A.2d at 138. The trial justice erred in ruling that the arbitrator exceeded his authority by deciding the precise issue submitted to him. *Oinoussian Steamship Corp.* v. *Sabre Shipping Corp.,* 224 F. Supp. 807, 809 (S.D. N.Y. 1963).

The trial justice and my Brother Weisberger place particular reliance on the contractual provision which bars the arbitrator from adding to, subtracting from, or "modifying" the terms of the contract. To be sure, at least one case has seized upon this common provision to support or justify the reversal of an arbitrator's interpretation. *Torrington Co.* v. *Metal Products Workers Union Local 1645,* 362 F.2d 677 (2d Cir. 1966). This result has been severely criticized by the commentators[5] and with good cause. By reviewing the arbitrator's decision on the merits, in order to implement the rather vague restrictions of a "no addition or modification" clause, the courts would appear to be overstepping the limitations imposed upon them by statute. Gorman, *Labor Law* 589-90 (1976).

> "This legerdemain, by which a judicial determination of arbitral error is transformed into an aribitrable amendment of the agreement, is an indefensible inroad into contractual finality." Dunau, *Three Problems in Labor Arbitration,* 55 Va. L. Rev. 427, 454 (1969).

Accordingly, the *Torrington* case has been, for the most part,

[5]Gorman, *Labor Law* 589-93 (1976); Dunau, *Three Problems in Labor Arbitration,* 55 Va. L. Rev. 427, 454 (1969); Feller, *A General Theory of the Collective Bargaining Agreement,* 61 Cal. L. Rev. 663, 802 n. 538 (1973); Christensen, *Labor Arbitration and Judicial Oversight,* 19 Stan. L. Rev. 671, 690-93 (1967).

rejected. *Amoco Oil Co.* v. *Oil Chemical & Atomic Workers International Union Inc.*, 548 F.2d 1288 (7th Cir.), *cert. denied*, 431 U.S. 905, 97 S. Ct. 1697, 52 L. Ed. 2d 389 (1977); Holly Sugar Corp. v. *Distillery, Rectifying, Wine & Allied Workers International Union*, 412 F.2d 899 (9th Cir. 1968); *Textile Workers Union of America* v. *Textile Paper Products, Inc.*, 405 F.2d 397 (5th Cir. 1968); *Dallas Typographical Union, No. 173* v. *A.H. Belo Corp.*, 372 F.2d 577 (5th Cir. 1967); Yakima Newspaper Guild Local No. 27 v. *Republic Publishing Co.*, 375 F. Supp. 945 (E.D. Wash. 1974).

The school committee argues, and the trial justice agreed, that the specificity of Articles XIX, XX, and XXI with respect to conditions under which leaves of absence and sabbaticals could be granted "completely cover the types of leaves upon which the parties had agreed." Both the committee and the trial justice took the position that since Ms. McKeown did not qualify for any of the specified leaves, the arbitrator, by granting her a year's unpaid leave, had modified the contract and added a new provision. This argument misses the mark. As noted above, neither the trial justice nor this court has any authority to make such inferences of contractual intent.[6] While we are reluctant to enter into the interpretive areas, we would point out that Article XIX of the agreement, wherein the teachers recognize the school committee's right to promulgate further rules relating to leaves, disputes any

---

[6]The United States Supreme Court in the *Steelworkers* trilogy sought to put a halt to the practice of the judiciary's usurping the arbitrator's responsibilities under the guise of ruling on the arbitrability of a dispute. *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960); *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); *United Steelworkers of America* v. *American Mfg. Co.*, 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960). In its trilogy the Court stressed that all doubts as to arbitration were to be resolved in favor of arbitration and observed that courts had no business weighing the merits of a grievance. Parenthetically, it should be noted that the collective bargaining agreement in the *American Mfg.* case and the Cumberland contract contain the identical boilerplate about the arbitrator's inability to add to, delete from, or modify. 363 U.S. at 565, 80 S. Ct. at 1345, 4 L. Ed. 2d at 1405.

suggestion that the parties intended to cover completely the types of leaves which could be granted. Furthermore, Ms. McKeown did not apply for one of the specifically enumerated leaves, but applied under the catchall provision which allowed teachers additional time off "for other personal reasons when such requests are considered valid by the Superintendent."

In short, the parties did not completely cover the occasions under which teachers could be absent from their pedagogical duties. A large measure of discretion was vested in the school committee and the superintendent regarding the granting of leaves of absence. The arbitrator did not "modify" the agreement by granting the requested leave, for there was sufficient evidence before him to indicate that, by arbitrarily granting and denying leaves in the past, without any accompanying rules or regulations, the school committee had breached the reasonableness requirement of the agreement.

Here, Cumberland's teachers and its school committee had agreed to submit all disputes concerning the interpretation of their contract to binding arbitration. The trial justice, through his reliance on the "no modification" clause, and without statutory authority, has reversed the arbitrator's interpretation. Judicial reversal of an arbitraiton award based solely upon a disagreement with the arbitrator's interpretation of the contract nullifies the bargain of the parties and threatens the strong public policy that favors private settlement of grievance disputes arising from collective bargaining agreements. *Belanger* v. *Matteson*, 115 R.I. at 355-56, 346 A.2d at 138. If the loser in arbitration has even modest prospects of winning in court, litigation is encouraged and the essence of arbitration — the conclusiveness of the award — is thereby defeated. Dunau, *Three Problems in Labor Arbitration*, 55 Va. L. Rev. 427, 461-62 (1969); Note, *Judicial Review of Arbitration Awards on the Merits*, 63 Harv. L. Rev. 681-82 (1950). If the bargain of the parties is to be effectuated and the policy of the Rhode Island Arbitration

Act to be adhered to, the following admonition should be our guide:

> "The arbiter was chosen to be the Judge. That Judge has spoken. There it ends." *Safeway Stores* v. *American Bakery & Confectionery Workers International Union, Local 111*, 390 F.2d 79, 84 (5th Cir. 1968).

Before concluding, a brief comment should be made about the views expressed by my Brother Weisberger. In his dissent he has detailed a series of cases in which he believes the arbitrator has misconstrued the contract or reached the wrong conclusion. If such a misconception occurred while the arbitrator was attempting to resolve a grievance dispute which arose in the public sector, my Brother would hold that the erring arbitrator had exceeded his power.

Such a view is totally inconsistent with the unanimous view expressed in other jurisdictions, and it completely nullifies the bargain of the parties. More importantly, nothing in chapter 9 of title 28 suggests or implies that the General Assembly ever intended that there be dual standards of judicial review under §28-9-18, one for the public sector and another for the private sector. If, as my brother contends, the public interest would be served by closer judicial scrutiny of the merits of an arbitration award made in the public sector, this service is to be afforded at the statehouse and not the courthouse.

The association's appeal is sustained, the judgment appealed from is reversed, and the case is remitted to the Superior Court for the entry of a judgment confirming the award.

Mr. Justice Weisberger, with whom Mr. Justice Doris joins, dissenting. The majority have in effect determined that an arbitration award, even where clearly erroneous and based upon substantial amendments to a collective bargaining agreement, will be insulated from judicial review unless

utterly irrational in nature. In coming to this conclusion, my brothers have embraced a distinguished line of federal cases which generally support the finality of arbitration in the private sector.

In applying the principles of these cases to arbitration of labor disputes in the public sector, we must consider certain lurking perils. The "common law of the shop" or past practice may include the application of elaborate statutory schemes for the government of state and municipal employees, and an arbitrator can be called upon to adjudicate disputes which may involve the interpretation of such statutes. Should the arbitrator under such circumstances be substantially insulated from judicial review? My position in this matter may be helpfully illustrated if a brief analysis of the case law in this area is given.

In *Belanger* v. *Matteson,* 115 R.I. 332, 346 A.2d 124 (1975), *cert. denied,* 424 U.S. 968, 96 S. Ct. 1466, 47 L. Ed. 2d 736 (1976), we reversed the trial justice for overturning the decision of the arbitrator on a question of law relating to the shifting of the burden of proof. In taking this position, we followed an extensive line of cases beginning with *United Steelworkers of America* v. *American Manufacturing Co.,* 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); and *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).

In the last case of this famous trilogy, Mr. Justice Douglas set forth the standard of review for an arbitrator's decision as follows:

> "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The

draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. *Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.* He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." 363 U.S. at 597, 80 S. Ct. at 1361, 4 L. Ed. 2d at 1428 (emphasis added).

In spite of language indicating that an arbitrator may not dispense his own brand of industrial justice, the federal courts have refused to disturb arbitration awards even in situations where one might argue that the arbitrator had exceeded his powers or that the results required an amendment of the contract. For example, in *Amoco Oil Co.* v. *Oil, Chemical & Atomic Workers International Union, Local 7-1, Inc.*, 548 F.2d 1288 (7th Cir. 1977), the court of appeals declined to overturn an arbitrator's award under circumstances which might be termed extreme.

In that case, when a fireman responded to an emergency at the employee's home, they discovered $30,000 worth of company equipment in his basement. As a result, he was discharged under a contract provision which required "just cause." The employee's sole defense was an assertion that some unidentified persons had brought this equipment to his premises in order to "frame him." No substantial evidence was produced in support of this assertion. The arbitrator found that the company had just cause to discharge the employee as of the time the discharge was effectuated, but further found that as of the end of the arbitration, the arbitrator had sufficient doubts so that discharge was not justified. Although he absolved the company from any possible connection with the unproved conspiracy, he ordered the reinstatement of the employee without back pay but with no

forfeiture of seniority. The court of appeals rejected a challenge that his award was arbitrary, capricious and without foundation in reason or fact. Relying on *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.*, *supra*, the court held that the correctness of the arbitrator's conclusion and the propriety of his reasoning were not relevant to a reviewing court in the light of the general principles enunciated in *Enterprise.* Judge Moore in his dissent in *Amoco* pointed out that the arbitrator's conclusion that the company had acted properly as of the date of discharge completely expended his mandate and suggested that in overruling management, in effect he began to " 'dispense his own brand of industrial justice,' " something he was prohibited from doing even under the theory of Mr. Justice Douglas.

My brother cites *United Steelworkers of America* v. *United States Gypsum Co.*, 492 F.2d 713 (5th Cir. 1974). This case is indeed worthy of close analysis. There a successor employer purchased substantially all of the assets and property of its predecessor company. The successor employer refused to accept the union contract but was found to be bound by certain arbitration provisions. Although the union was ultimately decertified, an arbitration was held and, among other things, the arbitrator determined that the employer was wrong in failing to bargain under a wage reopener clause. The arbitrator thereupon determined what agreement would have been reached concerning increases in wages had the bargaining taken place. He further found that the successor employer was in error in not deducting union dues under the checkoff provision, and he required that this sum be paid to the union without deducting it from the wages of any employees. The district court refused to enforce the arbitrator's determination as to a wage increase since in effect it made an agreement between the parties and violated the principles enunciated in *H.K. Porter Co.* v. *NLRB*, 397 U.S. 99, 90 S. Ct. 821, 25 L. Ed. 2d 146 (1970), which held that the National Labor Relations Board could require a successor employer to bargain with the union but not to observe the

substantive terms of the collective bargaining agreement to which it had in no way agreed. The district court further modified the award in respect to checkoff of dues to the extent that employees still with the company were required to pay the dues from future wages, while amounts due from those no longer employed were to be paid by the company.

The Court of Appeals for the Fifth Circuit reversed the district court and affirmed the arbitration award in all respects, holding that the rationale of *H.K. Porter* was not applicable and that the nexus between the breach of the re-opener clause and the method selected to remedy that breach was sufficient to support the conclusion that the remedy "draws its essence" from the contract. Similar assertions were made in respect to the checkoff provision. There the court contented itself with the observation that it could not say the arbitrator's decision was not within his remedial authority. Thus, an arbitrator could do, in part, what the National Labor Relations Board was specifically forbidden to do and could require a company to do something not contemplated by a contract to which it had never agreed in the first place. I consider this to be strong medicine indeed.

A few cases have recognized that a court may review and set aside an award if the arbitrator exceeds his contractual authority. *Cannon* v. *Consolidated Freightways Corp.*, 524 F.2d 290 (7th Cir. 1975); *Torrington Co.* v. *Metal Products Workers Union Local 1645*, 362 F.2d 677 (2d Cir. 1966). The weight of authority has been in support of the proposition that an arbitrator's determination will not be reviewed for error of law on the theory that for all practical purposes, save for utterly irrational conduct, the arbitrator's determination is completely insulated from review. *Safeway Stores* v. *American Bakery & Confectionery Workers International Union, Local 111*, 390 F.2d 79 (5th Cir. 1968). The rationale of these cases has been rather succinctly expressed by Professor Bernard Dunau in *Three Problems in Labor Arbitration*, 55 Va. L. Rev. 427, 461, as follows:

"The ordinary judge has ordinarily nothing to teach the ordinary arbitrator in the adjudication of an ordinary grievance under an ordinary collective bargaining agreement."

The theory seems to be that the arbitrator's normal expertise is so great, and a judge's lack of expertise is so dangerous to the whole process, that it is better to suffer an occasional egregious error than to submit the outcome of arbitration to the dangers even of limited judicial review.

The principal cases which follow this theory have dealt with grievances in the private sector. Only in *Belanger* v. *Matteson, supra,* did we touch upon a grievance relating to a public employee. We must now decide whether the rigors of the rule suggested in the plethora of federal and state cases should be applied to aribitration of grievances in the public sector. The School Teachers' Arbitration Act, G.L. 1956 (1968 Reenactment) chapter 9.3 of title 28, adopted in 1966, was superimposed upon a very extensive statutory scheme which had previously governed the operation and management of the public school system. This statutory scheme purported to define the rights and responsibilities of teachers from the inception of their service to their benefits in retirement, as well as the responsibilities and authority of school committees. *See* G.L. 1956 (1969 Reenactment) chapters 1 to 38 of title 16. Many of the collective bargaining agreements which are entered into between teachers' unions and school committees in the various cities and towns make specific or implicit references to one or more of these statutory contexts.

Thus, it may be necessary for an arbitrator in determining a grievance and in supplementing the contract with past practice to consider and interpret the contract in the light of Rhode Island educational law.

If this court should choose to abdicate from any meaningful function in the review of such determinations, the practical enforcement of a large body of public law would be

left to the untrammeled and unreviewable discretion of arbitrators. I think that the interest of the people of this state in the enforcement and application of laws relating to education and the rights and responsibilities of those who carry out the educational function is far too compelling in nature to warrant such abstention on our part. Even the most rudimentary demands of consistency and consonance would be set at nought by such a system, since arbitrators have no obligation even to provide reasons for their determinations.[1]

In the private sector, to a great extent, it was thought by Mr. Justice Douglas and his colleagues in *United Steelworkers of America* v. *Enterprise Wheel & Car Corp., supra,* that industrial peace and the giving up of the right to strike would best be served by making an arbitrator's decision to all intents and purposes final. In the public sector in Rhode Island there is no right to strike.

I would respectfully suggest that the appropriate rule to follow in respect to enforcement or review of an arbitrator's decision might be derived from a literal reading of the statute. The statute now provides that an award may be vacated "[w]here the arbitrator or arbitrators exceeded their powers." Section 28-9-18(b).[2] I would also suggest that we

---

[1]The instant controversy involves a school teacher. However, extensive statutory provisions may also be found governing state employees, *see* G.L. 1956 (1969 Reenactment) chapters 3 to 11 of title 36, and special legislation may be found relating to policemen and firemen, including methods of discipline and discharge. *See* G.L. 1956 (1970 Reenactment) chapter 20 of title 45, in respect to police officers, and G.L. 1956 (1968 Reenactment) chapter 9.1 of title 28, in respect to firefighters. Interpretation of these statutes may be of great importance to our governmental structure.

[2]My Brother Kelleher suggests that the foregoing statute would not allow the type of judicial review which is advocated here. I submit that this statute is most adequate to support such judicial review. To quote a statement of Mr. Justice Frankfurter, "Words being symbols do not speak without a gloss." *Rochin* v. *California,* 342 U.S. 165, 169, 72 S. Ct. 205, 208, 96 L. Ed. 183, 188 (1952). In this instance, the gloss placed upon the statutory language is judicial, not legislative. This court has ample authority to modify or limit the gloss which it has adopted to suit a different context.

should enforce contract provisions which preclude an arbitrator from making any decision amending, modifying, adding to or subtracting from the provisions of the agreement, as in the case at bar. I would urge that such cases as *Torrington Co.* v. *Metal Products Workers Union Local 1645, supra,* provide a much more workable rule in respect to arbitration in the public sector than do the majority of private employment arbitration cases which in effect furnish no review at all. Perhaps it would not be wholly inappropriate to limit arbitrators to the agreement or submission of the parties as was the rule of the earlier cases. This point of view was expressed in the dissent of Mr. Justice Whittaker in *United Steelworkers of America* v. *Warrior & Gulf Navigation Co., supra* at 585-87, 80 S. Ct. at 1354-55, 4 L. Ed. 2d at 1419-20. In addition to citing a number of cases, he quotes the language of then Chief Judge Cardozo in *Marchant* v. *Mead-Morrison Manufacturing Co.,* 252 N.Y. 284, 299, 169 N.E. 386, 391 (1929): "The question is one of intention, to be ascertained by the same tests that are applied to contracts generally. * * * No one is under a duty to resort to these conventional tribunals, however helpful their processes, except to the *extent that he has signified his willingness.*" (Emphasis added.)

I submit that when dealing with the sovereign power of the state and its subdivisions, clear expression of willingness should be essential to the submission of matters of magnitude to a third party for determination. Indeed, the Supreme Court of New Hampshire observed in *Tremblay* v. *Berlin Police Union,* 108 N.H. 416, 237 A.2d 668 (1968), that a requirement for arbitration in a labor contract to be subordinated to the provisions of state law might well be constitutionally required. For a number of useful concepts see Note, *Legality and Propriety of Agreements to Arbitrate Major and Minor Disputes in Public Employment,* 54 Cornell L. Rev. 129 (1968).

As public sector bargaining grows apace in our nation, new techniques must be devised to meet the ever increasing

problems. *See* Anderson, *The Impact of Public Sector Bargaining,* 1973 Wis. L. Rev. 986.

In the instant case, I am of the opinion that the arbitrator exceeded his contractual authority by adding a dimension to the contract in an area where the parties had set forth comprehensive terms governing all types of leaves of absence. I would therefore affirm the judgment as rendered in the Superior Court.

*Manning, West, Santaniello & Pari, V. James Santaniello,* for plaintiffs.

*Urso and Adamo, Natale L. Urso,* for defendants.