John R. **REYNOLDS**, Director of Public Safety, and the City of Woonsocket

v.

**FRATERNAL ORDER OF POLICE LODGE NO. 9 et al.**

No. 81–413–Appeal.

Supreme Court of Rhode Island.

May 15, 1984.

Aram P. Jarret, Jr., Asst. City Sol., for the City of Woonsocket, for plaintiff.

Paul P. Baillargeon, Paul P. Baillargeon, Inc., Woonsocket, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment entered in the Superior Court vacating an award made by an arbitrator in respect to a grievance filed by the Fraternal Order of Police Lodge No. 9 (union) against the Director of Public Safety and the city of Woonsocket (Woonsocket). The facts of the case are essentially undisputed and may be stated in pertinent part as follows.

Woonsocket and the union entered into a collective-bargaining agreement relating to the compensation and conditions of employment of police officers for the period July 1, 1977, to June 30, 1979. During the month of June 1978, two vacancies in the position of patrolman existed within the Woonsocket police department.

With full awareness of these vacancies, the city council on June 19, 1978, gave first passage to a budget that eliminated these two positions for the ensuing year. This budget was given second passage on July 17, 1978, and was approved by the mayor and made effective on July 28, 1978.

Although certain retirements occurred and new appointments were made to the police department thereafter, the two vacancies that existed on June 19, 1978, were never filled, and the union filed a grievance with Woonsocket on November 21, 1978, alleging a violation of § 6.4 of the collective-bargaining agreement then in force. This section contained the following provisions.

"6.4  In the event of any vacancy in the rank of Patrolman up to and including that of Commander, the same shall be filled within thirty (30) days of the creation of said vacancy if a list exists. If no list exists, the City will make every effort to fill the vacancy as quickly as possible."

Pursuant to the terms of the collective-bargaining agreement that governed the processing of grievances, the dispute was first presented to the Director of Public Safety and thereafter to the Personnel Board of the City of Woonsocket. After decisions were handed down rejecting the grievance, the union sought and obtained arbitration. A hearing was held before an arbitrator on June 18, 1979. This hearing resulted in an award in favor of the union which ordered Woonsocket to fill the vacancies within thirty days.

The arbitrator found the dispute to be properly subject to arbitration pursuant to § 14.1(a) of the collective-bargaining contract which provided that a grievance might be filed in respect to "the interpretation, meaning or application of any of the provisions of this Agreement to include alleged violations thereof." The arbitrator rejected the union's argument that the failure to fill vacancies affected the working conditions of the police officers. However, in interpreting the agreement, the arbitrator accepted the union's contentions that § 6.4 made it mandatory that vacancies be filled and that this contractual imperative could not be evaded by a unilateral budget modification by the city council. In interpreting this provision, the arbitrator offered the following rationale.

"The * * * language of 6.4 refers to any vacancy in the bargaining unit and is not permissive language that allows options as to filling vacancies. 'Any vacancy shall be filled within thirty (30) days of its creation unless no list exists.' Not 'unless the City decides not to fill it.' Not, 'unless the City Council decides budgetary reasons to eliminate it.' Not, 'unless the City decides to delay the filling for a longer time.' No, the only exception is if a list does not exist and the exception applies only to *when* it shall be filled not *if* it is to be filled." (Emphasis in original.)

The arbitrator pointed out that the authority of the Woonsocket City Council to make decisions on budgetary matters was subject to the requirements of an existing collective-bargaining agreement, many of whose provisions would inevitably have an even greater budgetary impact in respect to wages, vacations, holidays, and the like than would apply in the case of the filling of vacancies. He suggested that the city council could not unilaterally alter such terms and conditions as had been agreed upon by failing to provide the funding in its budget process.

Woonsocket sought to vacate this award by petition filed in the Superior Court. In response to this petition the union requested that the award be confirmed. After hearing and after the filing of memoranda, the trial justice found that the decision of the arbitrator indicated a manifest disregard of the contractual provisions of the collective-bargaining agreement. He found nothing in the agreement which provided that Woonsocket could not, in the exercise of its budget prerogatives, reduce the number of police officers to be employed by the city.

We must review the judgment of the Superior Court in the light of those principles that relate to the limited judicial scrutiny which may be applied to an arbitration award. We stated emphatically in *Jacinto v. Egan*, 120 R.I. 907, 391 A.2d 1173 (1978):

"The statutory authority to vacate an arbitration award where the arbitrators 'exceeded their powers' does not authorize a judicial re-examination of the relevant contractual provision. * * * The courts are in agreement that an alleged misconstruction of the contract is not a sufficient basis for vacating an arbitration award. * * * The proper role for the courts in this regard is to determine whether the arbitrator has resolved the grievance by considering the proper sources * * * but not to determine whether the arbitrator has resolved the grievance correctly. * * * As long as the award 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *Id.* at 912, 391 A.2d at 1175–76.

Although there was a spirited dissent in that case, the dissent dealt largely with the possibility that arbitrators in the public sector might be called upon to interpret state law and suggested that an effective judicial review of such determinations of law might be required more in the resolving of disputes in the public sector than in the private sector from which these principles had originally been derived. *Id.* at 922–23, 391 A.2d at 1181. *See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Safeway Stores v. American Bakery & Confectionery Workers International Union, Local No. 111*, 390 F.2d 79 (5th Cir.1968).

An examination of the arbitrator's award in the instant case indicates both that he drew its essence from the contract and that it is sufficiently grounded in the contract to be within the scope of his authority. We cannot discern a manifest disregard of the contractual provisions or a completely irrational result. *Belanger v. Matteson*, 115 R.I. 332, 355–56, 346 A.2d 124, 138 (1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). Although the trial justice obviously disagreed for rational rea-

sons set forth in his bench decision, we cannot say that the arbitrator's interpretation of the contract was not "passably plausible." We believe that this case does not present a sufficiently compelling context to warrant our departure from the principles set forth in *Jacinto v. Egan* and *Belanger v. Matteson*, both *supra*, and reiterated in *Burns v. Segerson*, R.I., 404 A.2d 500 (1979), and *Rhode Island Council 94 v. State*, R.I., 456 A.2d 771 (1983).

For the reasons stated, the union's appeal is sustained, the judgment of the Superior Court is reversed, and the case is remanded to the Superior Court for entry of judgment in confirmation of the award.