**STATE of Rhode Island**

v.

**RHODE ISLAND ALLIANCE OF SOCIAL SERVICE EMPLOYEES, LOCAL 580, SEIU.**

**No. 96–50–Appeal.**

Supreme Court of Rhode Island.

May 2, 1997.

Kevin J. Aucoin, William E. Smith, Providence, John Turano, Westerly.

Francis X. Flaherty, Nicole S. Flaherty, Warwick.

Before LEDERBERG, BOURCIER and SHEA (Ret.), JJ.

**ORDER**

This matter came before a panel of the Supreme Court on April 15, 1997, pursuant to an order that directed both parties to show cause why the issues raised in this appeal should not be summarily decided. The plaintiff, the State of Rhode Island, has appealed a Superior Court order granting the motion of the defendant, the Rhode Island Alliance of Social Service Employees, Local 580, SEIU (union), to confirm an arbitrator's award and denying the state's motion to vacate the award.

After hearing the arguments of counsel and after reviewing the memoranda of the parties, this Court is of the opinion that cause has not been shown, and the petition will be decided at this time.

The facts giving rise to this litigation are not in dispute. The union is the sole and exclusive bargaining agent for social workers employed by the state at the Department of Children, Youth, and Families (DCYF). At the time this dispute arose, the parties had agreed to a maximum caseload of 28 children per caseworker. In July 1992, the state created a new unit within DCYF, called the case monitoring unit (monitoring unit), without consulting with or notifying the union. The purpose of the new unit was to cull the less demanding cases from the normal caseworker unit, called the generic unit, to permit those caseworkers to concentrate on more difficult cases. The state did not intend the

monitoring unit to be subject to the maximum caseload limit.

The union filed a grievance claiming a violation of the caseload agreement. After the grievance was denied, the matter proceeded to arbitration. The arbitrator concluded that the state had violated the parties'. collective bargaining agreement by failing to consult with the union prior to creating the new positions and by failing to negotiate a caseload agreement for the monitoring unit. The arbitrator determined that caseworkers in the generic unit were "bearing the brunt of increased intensity in their case loads as a result of the skimming off of the 'stabilized' cases" and that the caseloads of the workers in the monitoring unit were excessive. He concluded that both sets of workers were entitled to additional compensation along the lines of awards made in previous arbitration cases between the parties.[1] Rather than impose a specific monetary solution, however, he ordered the parties to negotiate to determine fair compensation for the increase in load intensity in the generic unit and for the excess cases (beyond the maximum of 28) assigned to workers in the monitoring unit, and to negotiate to establish "fair and equitable case loads for both Generic and Case Monitoring case workers." In addition, the arbitrator ordered the state to hire "sufficient new personnel to staff such case loads" within six months. Finally, the arbitrator awarded attorney's fees to the union.

The judiciary has a limited role in the labor arbitration process. *Prudential v. Flynn,* 687 A.2d 440, 441 (R.I.1996). As long as an arbitration award " 'draws its essence' from the contract and is based upon a 'pass-ably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *Jacinto v. Egan,* 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960); *Safeway Stores v. American Bakery & Confectionary Workers International Union, Local 111,* 390 F.2d 79, 83 (5th Cir. 1968)). We are persuaded that the arbitrator acted well within his authority in ordering the state to negotiate with the union on the issues of compensation and caseloads raised by the new monitoring unit. These aspects of his decision are especially reasonable in light of the state's lengthy nistory of repeated violations of caseload agreements with DCYF social workers. We are of the opinion, however, that the award of attorney's fees was punitive in nature and exceeded the authority of the arbitrator. Consequently, the portion of the decision awarding attorney's fees must be vacated.

For these reasons, we affirm in part and reverse in part the judgment of the Superior Court, and we remand this case to the Superior Court with instructions to vacate the award of attorney's fees.

WEISBERGER, C.J., and FLANDERS, J., did not participate.

---

1. The state has argued that the formulas adopted in the prior arbitration awards would result in a windfall to caseworkers if applied in this case. We do not interpret the arbitrator's decision as requiring strict adherence to prior formulas. Rather, the decision requires the parties to negotiate the issue of compensation, relying on prior awards only as a guide. Presumably, factors such as whether the cases assigned to the monitoring unit were less difficult will be considered in negotiating compensation.