DECISION
This matter is before the Court on cross motions. The Petitioner, Town of Scituate, seeks to vacate an arbitration award in favor of a former Town employee, Police Officer Henry Chabot. The union representing Officer Chabot, Local 502 of the International Brotherhood of Police Officer (IBPO), seeks to confirm the award.
This Court has reviewed the memoranda submitted by the parties and has considered the oral arguments offered to the Court on January 19, 2005.
Prior to a recitation of the substantive facts, the Court must address a procedural matter raised by the Town.
In seeking to vacate this award, the Town first contends that the arbitrator erred in finding that it waived its right to raise a procedural arbitrability challenge. The Town claims that the grievance filed in the matter is time barred under the terms of the Collective Bargaining Agreement's (CBA) grievance procedure.
The Union does not deny this late filing; however, it asserts that this challenge was not raised at the hearing. They further assert that no transcript exists and no documentary evidence was introduced to support the Town's position.
The Town offers their post-memorandum which contains their procedural arbitrability argument as evidence that the issue was raised before the arbitrator.
This Court is constrained in ruling on this important issue by a lack of any corroborative evidence adduced at the hearing by the Town. The Town's offer of its post-hearing memorandum is just that — a post-hearing document containing argument as opposed to evidence derived from the record.
On the facts before the Court on this issue, the majority (the Union and Arbitrator Bloodsworth) rules as there is nothing in the record to suggest otherwise. The arbitrator's determination that the Town waived this procedural defense is sustained.
In turning to the Town's second contention, that the arbitrator exceeded his authority in fashioning a remedy in this matter, the chronology of events giving rise to the grievance are highly relevant and not in dispute.
On May 5, 1996, Officer Chabot, age 37 years, injured his back as he exited his police cruiser while on duty. He was placed on "Injured on Duty" (IOD) status pursuant to G.L. 1956 § 45-19-1. Pursuant to the CBA between the parties, specifically Section IX, subsection 1(d), the Town sought an examination of Officer Chabot by Dr. A. Louis Mariorenzi, an orthopaedic specialist, on January 9, 1997. Section IX, subsection 1(d) provides:
 "It is agreed by and between the Town of Scituate and members of the Police Department that a Town appointed Physician may examine an employee who reports an illness or original injury and also determine whether or not an employee, ill or injured, is ready to return to work."
This January 9, 1997 examination confirmed this officer's total inability to perform police work at that time and the IOD benefits continued. Approximately four and one-half months later, on May 20, 1997, Dr. Mariorenzi performed a re-examination pursuant to Section IX, subsection 1(d). His second report dated May 27, 1997 makes several notable observations and findings. On page 3, he states:
 "Certainly at the time of this evaluation it is my opinion that this patient has made such significant and substantial improvement that surgery at this time should not be a consideration. . . . At the present time, maximum medical improvement has not occurred, but significant improvement has occurred and further improvement is anticipated."
and finally — under the section — "ABILITY TO WORK:" the doctor states:
 "The patient presently cannot be considered totally incapable of gainful employment. There are numerous jobs within the police department that are within his physical capacity. He certainly would not be restricted to any type of work required within the station. He certainly would be capable of motor car duty for at least four hours a day at the present time. I do believe that with further improvement this patient should be able to return to his usual type of employment."
Based upon this positive and promising report, Chief William Mack in carefully detailed correspondence dated June 3, 1997, notified Officer Chabot that he was exercising his management prerogative pursuant to Section IX, subsection 1(j) of the CBA which provides:
 "In the event that a police officer becomes injured while on duty and is not capable of performing his actual or normal duties, but is capable of being of assistance to the police department, he may then be considered for assignment to light duty at the Chief's discretion. Light duty shall be of a nature of acting as a clerk or as a dispatcher or some other type of activity that will not put him in actual physical confrontation with another individual. . . ."
The Chief's request clearly stated that this officer would be performing "light duties" such as firearms cleaning and desk duty. At the request of Officer Chabot, the Chief also extended him a personal day to accommodate his request to consult his own doctor on this issue.
Rather than provide any medical information contrary to Dr. Mariorenzi's May 27, 1997 report, Officer Chabot devoted his attention to crafting a grievance which was filed on June 7, 1997. The Town denied this grievance on June 9, 1997.
This Court finds this chronology of events to be significant. It establishes the framework upon which the arbitrator wasrequired to decide this matter based upon the clear language of the CBA.
In undertaking its review of this matter, the Court has neither ignored nor overlooked "other" evidence in the record; namely, a report from Officer Chabot's own physician, Dr. James G. Wespic dated July 24, 1997, which summarized his observations that day,[1] and a determination by the Scituate Pension Board in April of 1998 that Officer Chabot be granted a disability pension. The respondent Union relies heavily on these facts as did the arbitrator who ultimately declared that this officer had a "reasonable belief that he was not physically fit to return to work" on June 6, 1997.
This Court is mindful of its limited authority in reviewing and vacating arbitration awards. An arbitration award may be vacated when the arbitrator manifestly disregarded the law or the contract, or when the arbitration award was completely irrational. Prudential Property and Casualty Insurance Co. v.Flynn, 687 A.2d 440, 442 (R.I. 1996). As long as the award "draws its essence" from the contract and is based upon a "passably plausible" interpretation of the contract, it is within the arbitrator's authority, and not subject to vacation by the Court. Jacinto v. Egan, 120 R.I. 907, 391 A.2d 1173 (1978). Grounds for vacating an award are provided by statute in G.L. 1956 § 28-9-18. The subsection pertinent to the motions before the Court is subsection (2) which provides:
 "Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made."
An arbitrator may exceed his or her powers, thereby requiring a court to vacate an arbitration award if that award fails to "draw its essence" from the collective bargaining agreement or is not based upon a "passably plausible" interpretation of the same.R.I. Brotherhood of Correctional Officers v. State DOC,707 A.2d 1229, 1234 (R.I. 1998). Therefore, a court may vacate an award where the arbitrator manifestly disregarded a contractual provision, reached an irrational result, R.I. Council 94,AFSCME, AFL-CIO v. State 714 A.2d 584-588, (R.I. 1998) disregarded clear-cut contractual language, or attributed to the language "a meaning that is other than that which is plainly expressed. State v. R.I. Employment Security Alliance, Local401, 840 A.2d 1093, 1096 (R.I. 2003).
This Court is equally mindful of the well-established principle regarding contract interpretation, that is, if the language of a contract is clear and unambiguous, the words of the contract must be given their plain and ordinary meaning.
Finally, while the Supreme Court has repeatedly approved of the vacating of an arbitration award deemed irrational — this term has not been further defined by the Supreme Court. Absent such definition, this Court has, in other arbitration matters relating to motions to confirm or vacate, defined the term "irrational" as follows:
 An irrational award is one "not endowed with reason or understanding, lacking usual or normal mental clarity or coherence, not governed by or according to reason." Merriam Webster's Collegiate Dictionary,
10th edition 1993.
The sum and substance of the arbitrator's decision is stated on page 10 of his decision. He states:
 "Despite the conclusions of the Town's own physician, Chabot had a reasonable belief that he was not physically fit to return to work in any capacity and this belief was confirmed well after the fact by the Town's Pension Board."
In the next paragraph, he concludes:
 ". . . the Town application of the light duty provision was inappropriate and contrary to R.I.G.L. § 45-19-1 (IOD) in that it prohibits the unilateral conversion of an employee from IOD to SICK LEAVE, and the Scituate Police Department had no permanent light duty position for Chabot to assume and thus he must remain on IOD status."
This Court finds the arbitration award cannot withstand even the limited judicial scrutiny permitted in these matters.
This arbitrator's cursory analysis and conclusions can best be described as speculation and manipulation of both clear contract language and the undisputed chronology of events. The arbitrator's attempt to bootstrap medical information non-existent as of June 6, 1997, and his creation of language and a job classification non-existent in the CBA, that is, "permanent light duty" are troublesome.
It is undisputed in the record that when Officer Chabot refused to return to light duty on June 6, 1997, he did not possess the information relied upon by the arbitrator — that is — Dr. Wespic's report or the Pension Board's Decision. The record is devoid of any information beyond Chabot's subjective belief, (which was contrary to Dr. Mariorenzi's medical opinion) that he was unable to work at all. There is simply no evidence, and consequently, no basis to conclude this officer had a "reasonable belief" he could not work in any capacity on June 6, 1997. Absent such evidence, this Court is left to wonder why Officer Chabot was not cited for blatant insubordination. While this arbitrator quarrels with using this officer's sick leave thereafter, the Court finds such action was in fact generous in light of the officer's insubordination.[2]
Moreover, the arbitrator's analysis disregards the clear-cut language of the light duty provision under the CBA. His conclusion that light duty must be a "permanent" position is illogical and plainly absent from the CBA. It is clear that light duty under the CBA is a transitional position to assess and gradually return injured officers back to full duty. "Permanent" light duty is neither referenced nor envisioned by the CBA. Permanent light duty is a construct invented by the arbitrator to attempt to justify his decision.
This arbitrator also disregarded clear contract language that gives the Town's physician the authority to invoke light duty. While the contract permits an injured officer to treat with a doctor of his own choosing, only the Town physician may determine an officer's ability to work under the contract pursuant to Section IX, subsection 1(d) of the CBA.
 CONCLUSION
The arbitrator failed to meaningfully correlate any evidence to support his decision. His decision is clearly irrational, did not draw its essence from the CBA, disregarded clear-cut language and stretched the meaning of language far beyond what was plainly stated.
For these reasons, the arbitrator exceeded and imperfectly exercised his power to fashion a mutual, final and definite remedy. The Town's motion to vacate is granted; the Union's motion to confirm is denied.
[1] Dr. Wespic's opinion was contrary to Dr. Mariorenzi's opinion which was issued approximately two months earlier.
[2] The arbitrator's decision would result in a $9,000 payment to Officer Chabot in the form of accumulated sick leave under the CBA.