RHODE ISLAND COUNCIL 94, American Federation of State, County, and Municipal Employees, Local 314

v.

STATE.

Nos. 80–257–Appeal, 80–259–Appeal.

Supreme Court of Rhode Island.

Feb. 23, 1983.

Cobleigh, Fleury, Hefner & Watt, Gerard P. Cobleigh, Warwick, for petitioners.

Paul L. Foster, Cranston (Dept. for Children & Their Families), for respondent.

## OPINION

SHEA, Justice.

This case was heard in the Superior Court on the state's motion to vacate and the union's application for an order confirming an arbitration award. The arbitration resulted from grievances filed by the union on behalf of three correctional officers who had been dismissed following an investigation of an escape of nine youths from the boys' training school in December 1977. The arbitrator vacated the dismissals and reinstated the employees. After a hearing, a Superior Court justice confirmed the award in regard to one employee but vacated the award in regard to the remaining two employees. The trial justice ruled that just cause existed for disciplinary action against the two, and he remanded the matter back to the arbitrator to determine an appropriate remedy. A second hearing was

held upon application for confirmation of the second arbitrator's award made after the remand. The same justice vacated the second award and remanded the case again, ordering arbitration de novo before a different arbitrator. The union appeals from the second order, claiming the reviewing justice exceeded his authority in substituting his judgment for that of the arbitrator.[1] We agree.

On December 10, 1977, nine inmates escaped from the Youth Correctional Center, a high-security facility for juvenile offenders. Following an investigation of the incident, three youth-correctional officers, Harold Hill, Clarence White, and Wayne Black, were placed on administrative leave with pay, pending an administrative hearing. On December 22, 1977, after a hearing, the three officers were dismissed by the then Director of the Department of Corrections "for malfeasance and nonfeasance in the performance of their duties during the escape." Pursuant to the collective-bargaining agreement in existence between the State and the Rhode Island State Employees Association, the union elected to have this matter submitted for arbitration. The issues presented for arbitration were: (1) was there just cause for the disciplinary action of the state? (2) if so, what was the appropriate remedy?

After a hearing, the arbitrator directed in August 1978 that Officer Hill be reinstated retroactive to December 22, 1977, but that a letter of reprimand be placed in his file to become a permanent part of his personnel record. In the cases of Officers White and Black, he decided they were to be reinstated as of June 20, 1978, and that their records from December 22, 1977, through June 20, 1978, be marked "leave without pay."

The August 1978 award was before the Superior Court upon the state's motion to vacate and the union's motion to confirm

1. Two appeals are consolidated here: No. 80–257–A., the application for affirmance of the original arbitration award concerning all three employees, and No. 80–259–A., the application for affirmance of the second arbitration award

concerning Wayne Black and Clarence White only. The briefs and oral arguments address only the matter of the Superior Court order vacating the *second* arbitration award. We therefore shall only address this issue.

the award. In his decision, the trial justice concluded that there was just cause for some disciplinary action in all three cases. He confirmed the award with respect to Hill but vacated that part of the award which pertained to Officers Black and White. The court held that the arbitrator had disregarded the provisions of the agreement between the parties by imposing a punishment of "leave without pay," which was not provided for in the collective-bargaining agreement. The award concerning Black and White was vacated, and the matter was remanded to the arbitrator with directions to conform the remedy to the contract.

The second award by the arbitrator made on remand simply stated:

"Conforming with an order of the Superior Court, M.P. # 12819 dated 21 November 1979 as pertains to Clarence White and Wayne Black and in accordance with the provisions of Article 24 of the bargaining agreement it is directed that they be *suspended without pay* from December 22, 1977 through June 20, 1978." (Emphasis added.)

This matter was heard again by the same justice of the Superior Court upon application by the union for an order confirming this second arbitration award and upon the state's motion to vacate. After a hearing on March 20, 1980, the court again vacated the arbitrator's award.

"The Court has considered the matter and has made a determination that the arbitrator has again disregarded the contractual provisions. There is nothing in the contract which authorizes the arbitrator to apply a suspension retroactively. The contract speaks in terms of—the Court now refers to Section 24.1, subparagraph 3, with a single word, and the word is 'suspension.' Nothing in the article relating to discipline and discharge remotely hints that that provision can be retroactive. * * * The Court finds, consequently, there has been a manifest disregard of that provision and that the award must be vacated."

An order embodying the court's findings was entered.

Before us the union argues that the hearing justice exceeded his authority in vacating the arbitrator's award.

■ Judicial authority to review or to vacate arbitration awards is limited. We have held that an arbitration award is the decision of an extrajudicial tribunal by whose judgment the parties have mutually agreed to abide. *Jacinto v. Egan,* 120 R.I. 907, 911, 391 A.2d 1173, 1175 (1978); *Belanger v. Matteson,* 115 R.I. 332, 355, 346 A.2d 124, 137–38 (1975). Strong public-policy considerations dictate that a reviewing court's ability to overturn awards should be narrowly circumscribed.[2] Therefore, the statutory authority to vacate an arbitration award when an arbitrator exceeds his power "does not authorize a judicial re-examination of the contractual provisions." In fact, we have articulated the standard for reviewing these awards: "Absent a manifest disregard of the contractual provisions, or a completely irrational result, the courts have no authority to vacate the arbitrator's award." *Jacinto v. Egan,* 120 R.I. at 914, 391 A.2d at 1176; *Belanger v. Matteson,* 115 R.I. at 356, 346 A.2d at 138. A reviewing court should determine only whether the arbitrator has resolved a grievance by considering the proper sources—"the contract and those circumstances out of which comes the 'common law of the shop'." *Jacinto v. Egan,* 120 R.I. at 912, 391 A.2d at 1176 (quoting Gorman, *Labor Law* 585 (1976)). Therefore, under *Jacinto,* the inquiry becomes whether or not the arbitrator considered the proper sources when fashioning the award, not whether or not he resolved the grievance properly.

2. "A judicial reversal of an arbitration award based solely on the reviewing court's disagreement with the arbitrators' interpretation of the contract would not only nullify the bargain made by the parties but also threaten the strong public policy that favors private settlement of grievance disputes arising from collective bargaining agreements." *Belanger v. Matteson,* 115 R.I. 332, 355–56, 346 A.2d 124, 138 (1975).

The first award of the arbitrator indicates he considered carefully the circumstances surrounding the escape from the training school. The recommendations in the award suggest that both parties bore responsibility for the incident. He found the employees had not behaved responsibly. He also suggested the employer had been lax in maintaining communications between shifts of employees as well as in training the officers.[3] It is apparent that he concluded that since both parties were responsible, dismissal was too harsh a remedy; therefore, he ordered reinstatement of Officers Black and White.

The record indicates that the arbitrator considered the proper sources when fashioning this award. Article 24 of the collective-bargaining agreement clearly provides "suspension" as an appropriate method for disciplinary action.[4] But the state argues that the arbitrator failed to consider established public policy and law contrary to his remedy. They assert G.L.1956 (1969 Reenactment) § 36–4–36 should have been applied by the arbitrator. It provides that disciplinary suspension of employees without pay shall not exceed thirty days in any twelve-month period. Since the only disciplinary measure available under article 24 of the agreement that is more severe is dismissal, the state relies on § 36–4–36 as authority for affirming the dismissals.

■ This argument has no merit. It is the intention of the Legislature that the merit-system laws should not be applied in binding-arbitration cases. The original enactment, (G.L.1956 § 36–11–5, as amended by P.L.1958, ch. 178, § 5), which provided that the merit-system laws "when exclusive" should be followed although the matter involved might be arbitrable has been specifically repealed by P.L.1972, ch. 277, § 2. It is clear then that the Legislature

did not intend to impose the merit system upon parties submitting to binding arbitration.

■ The state also argues that this award violates the public policy announced in *Guarino v. Department of Social Welfare*, R.I., 410 A.2d 425 (1980). There, discharge was held to be an appropriate disciplinary remedy when a corrections officer disobeyed an order by abandoning his post before a replacement was available. We stated "[s]erious consideration must be given to the need for discipline among employees of a correctional facility" because of the public interest in having these officers perform their jobs adequately. *Id.*, 410 A.2d at 428. In this case, however, the arbitrator did address the public interest when fashioning his award. He thoroughly reviewed the circumstances surrounding the escape. Unlike *Guarino*, the arbitrator attached responsibility for the incident not only to these officers but to the employer as well. He fully considered the public welfare since his recommendations included specific suggestions to improve the quality of security maintained at the facility.

Finally, the state argues, and the trial justice agreed, that the arbitrator disregarded the contract when he applied the suspension retroactively. He held that nothing in the contract authorized the suspension to be applied retroactively and therefore, such discipline can only be prospective.

■ The proposition that an arbitrator has inherent power to fashion an appropriate remedy has considerable support. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Furthermore, we have reaffirmed this principle, "[a]s long as the award 'draws its essence'

---

3. "It is evident at this time that much work remains to be done at the Youth Correctional Center in upgrading the quality of training and proficiency of the guard force. If sufficient communication had been established by and between the guard shifts, the men * * * would have known of the missing keys."

4. Article 24 reads: "Where appropriate, disciplinary action or measures shall include *only* the following: (1) Oral reprimand, (2) Written reprimand, (3) Suspension, (4) Discharge, (5) Demotion where appropriate."

from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must come to an end." *Jacinto v. Egan,* 120 R.I. at 912, 391 A.2d at 1176. In the absence of complete irrationality, the award is not subject to judicial review. *Smithfield Education Association v. Smithfield School Committee,* 120 R.I. 191, 192, 386 A.2d 1093, 1094 (1978). In this case, we cannot say this award is irrational. The arbitrator evaluated the proper sources when making the award. He considered the events surrounding the incident and decided "suspension," a remedy sanctioned by article 24 of the collective-bargaining agreement, was appropriate. Although the trial justice correctly recited that nowhere does the contract provide for retroactive discipline, we would point out that nowhere is such an application of suspension prohibited.

We once again emphasize that "judicial reversal of an arbitration award solely on a reviewing court's disagreement with the arbitrator's interpretation of a contract" is prohibited. *Id.* at 191, 386 A.2d at 1093. Since this award is not clearly irrational, we hold that the trial justice exceeded his authority in substituting his judgment for that of the arbitrator.

For the foregoing reasons, the union's appeal is sustained, the judgment of the Superior Court is vacated, and the award of the arbitrator is affirmed. The papers in this case are remanded to the Superior Court for entry of judgment in conformance with this opinion.