544 A.2d 117 (1988)
STATE of Rhode Island et al.
v.
NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES LOCAL No. 79, et al.
No. 86-120-Appeal.
Supreme Court of Rhode Island.
June 21, 1988.
John L.P. Breguet, Department of MHRH, Cranston, for plaintiff.
Malcolm A. Najarian, Gary Gentile, Non-Rhode Island attorney, Providence, for defendant.

OPINION
MURRAY, Justice.
This is an appeal by the National Association of Government Employees, Local No. 79 (the union), from a judgment of the Superior Court vacating an arbitration award that called for the reinstatement of a nurse employed at the Rhode Island Medical Center who had been discharged for dragging an elderly woman patient across the floor and outside into bitter cold weather and for failing to report an injury to a patient. We affirm the judgment of the Superior Court judge.
According to the record, Patricia Maciel (Maciel) received a notice of termination of employment on March 31, 1980. The union filed a grievance pursuant to the terms of a collective-bargaining agreement, protesting the discharge of Maciel. Since the dispute was not resolved, the matter was submitted to arbitration.[1] Hearings were held before an arbitrator on July 28 and August 27, 1980.
*118 The arbitrator made the following findings of fact. Before her employment termination Maciel, a registered nurse with twenty-two years of experience, was the charge nurse in a part of the General Hospital identified as Varley 3. She had under her supervision six attendants and approximately forty patients.
One of Maciel's patients, Kathleen Gibson (Gibson), was a long-time resident who was in her sixties and subject to periods of confusion, hostility, and hallucinations. Uncontradicted testimony at the hearings indicated that on March 1, 1980, Gibson had apparently been quite noisy and hostile. According to witnesses, Maciel told Gibson to sit in a chair or she would be put out into the cold. Gibson ignored the warning and continued to be disruptive. Maciel responded by grabbing Gibson by her legs, pulling her across the floor and through a door leading to the courtyard. The weather was described as bitterly cold. An attendant testified that the door closed on Gibson's legs. The attendant assisted Gibson back inside to the dayroom and noticed a cut on Gibson's leg where the door had closed on it. The attendant informed Maciel about the cut; however, Maciel continued to pass out medication to patients. Thereafter, Maciel returned to Gibson and bandaged the cut.
Following these events Gibson continued to be noisy and belligerent. Maciel admonished her about being disruptive and informed her that she would again be placed out into the cold. The witnesses testified that for the second time Maciel dragged Gibson out into the courtyard, abandoning her and exposing her to bitterly cold temperatures. The following day, the patient's daughter complained about injuries to her mother and requested an investigation. Evidence was admitted, subject to the union's motion to strike, that the patient suffered injuries to her forearms that required sutures. The arbitrator found that Maciel's conduct caused the injury to Gibson's leg but did not conclude that the cut suffered by Gibson was in fact caused by Maciel's conduct.
Acting Supervisor Joan Wilkicki (Wilkicki) initiated an investigation and obtained written reports from attendants regarding Gibson's injuries. Wilkicki questioned Maciel who admitted that she had dragged Gibson across the floor and outside into the courtyard. Wilkicki testified that nurses must report patient injuries and file an incident report regarding any injury suffered by a patient. According to Wilkicki, the records did not indicate that Maciel had filed an incident report. Subsequently, Wilkicki advised Maciel to secure union representation. Maciel declined. Following the investigation, Maciel was terminated from her employment at the Medical Center.
On December 3, 1980, the arbitrator found, based on uncontroverted evidence "that the grievant without good reason on two separate occasions improperly dragged or pulled an elderly and mentally confused patient eight to ten feet across the dayroom floor and twice left that patient in a hazardous position." Additionally, the arbitrator was convinced that as a result of Maciel's conduct the door closed on Gibson's leg and caused an injury. The arbitrator recognized that circumstances may arise that require nurses to physically restrain patients and that such conduct is then necessarily permitted. However, he stated, "I cannot accept the premise that placing a scantily-clad elderly woman in a position of exposure to bitter, winter cold is acceptable under any standards." He added that she created the potential for serious harm to Gibson and serious liability on the part of her employer.
However, in the award the arbitrator attributed Maciel's conduct to a lapse in memory. He stated that the grievant ignored or "forgot her obligation as a nurse toward her patient." The arbitrator opined that Maciel's actions warranted significant discipline but not termination. The discharge was reduced to a three-month suspension, and thereafter, Maciel was reinstated without loss of benefits or seniority.
On December 31, 1980, in response to the ruling, the state filed a motion to vacate the decision of the arbitrator pursuant to *119 G.L. 1956 (1979 Reenactment) § 28-9-18, as amended by P.L. 1979, ch. 126, § 2. On January 5, 1981, the union filed a motion to confirm the award. A Superior Court judge reviewed the decision of the arbitrator and confirmed the arbitrator's award in part and vacated it in part.
Our judicial authority to review or to vacate arbitration awards is limited. Absent a manifest disregard of the contractual provisions, or a completely irrational result, the courts have no authority to vacate the arbitrator's award. Rhode Island Council 94 v. State, 456 A.2d 771 (R.I. 1983); Jacinto v. Egan, 120 R.I. 907, 391 A.2d 1173 (1978); Belanger v. Matteson, 115 R.I. 332, 346 A.2d 124 (1975). A reviewing court must determine whether the arbitrator has resolved a grievance by considering the proper sources, such as the contract in effect between the parties. Rhode Island Council 94 v. State, 456 A.2d at 773.
The Superior Court judge held that the arbitrator exceeded his authority. The judge held that after the arbitrator determined that just cause existed, he improperly reduced the dismissal imposed by the state. The judge predicated the decision on article XXIX, section 29.1, of the collective-bargaining agreement in effect between the State of Rhode Island and the union. Particularly noting that section 29.1 provides, "It is agreed that the appointing authority may dismiss, demote or suspend an employee for just cause[,]" the Superior Court judge, in his decision, stated that
"[i]n this case the arbitrator found there was sufficient evidence to determine just cause existing for discipline and said arbitrator then proceeded to fashion his own remedy of a three month suspension. The issue before this arbitrator was solely a determination of the existence of just cause, and his election to reduce the discharge to a three month suspension was clearly an act in excess of his power and therefore in violation of § 28-9-18."
The judge confirmed that part of the arbitrator's decision that found that just cause did exist to discipline Maciel for her conduct. However, the arbitrator's reduction of the discharge to a suspension was vacated by the Superior Court judge.
We have held that as long as the arbitrator's award "`draws its essence' from the contract and is based upon a `passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." Jacinto v. Egan, 120 R.I. at 912, 391 A.2d at 1176; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960).
In the instant case the record indicates that the arbitrator was asked to determine the following: "Was Patricia Maciel discharged without just cause, and if so, what should the remedy be?" In response the arbitrator determined that good cause was evident to warrant significant discipline but less than termination. The arbitrator then reduced the sanction from a discharge to a suspension. The Superior Court judge relied upon the judicial authority to review or vacate the award by an arbitrator as prescribed in § 28-9-18, in situations "Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter submitted was not made."
In the case before this court the valid and effective collective-bargaining agreement, section 29.1, expressly provides that the appointing authority, the State of Rhode Island Department of Mental Health, Retardation and Hospitals (MHRH), is empowered to discharge an employee for just cause. John Hickey, chief personnel officer of the MHRH testified that, without exception, the department policy had been to discharge employees for instances of patient assault. Upon the determination by the arbitrator that just cause for discipline existed, section 29.1 was operative, and any further determination by the arbitrator was made in disregard of the existing agreement between the parties. We believe that the Superior Court judge properly concluded that the arbitrator's decision constituted a manifest disregard of the contract provisions *120 and the arbitrator exceeded his powers in violation of § 28-9-18.
Accordingly, we hold that the arbitrator exceeded his authority by reducing the discharge to a suspension. The sanction imposed by the appointing authority is provided for in section 29.1 of the collective-bargaining agreement. Hence the Superior Court judge correctly concluded that such contract provision cannot be disregarded in the arbitration process.
The appeal by the union is denied and dismissed. The judgment rendered by the Superior Court is affirmed.
KELLEHER, Justice, dissenting.
I would affirm the arbitrator's decision. Not only did he comply with the contract provisions of the collective-bargaining agreement but he also supplied rational explanations for his actions. As noted by the majority, the satisfaction of these two bases of review renders the judiciary powerless to vacate an arbitrator's award. Rhode Island Council 94 v. State, 456 A.2d 771 (R.I. 1983).
Although section 29.1 of the collective-bargaining agreement provides that the state may dismiss, demote, or suspend an employee for cause, section 29.4 states that any employee who believes that he or she has been unfairly treated by dismissal, demotion, or suspension, and gives reasons for the dissatisfaction, may have the sanction reviewed in accordance with the grievance and arbitration procedures set forth in the agreement.
Section 31.2 specifically states that the arbitrator's decision shall be final and binding upon the parties.
Here Maciel's dismissal followed the established procedures and finally came before an arbitrator who was asked by both parties to determine whether Maciel was "discharged without just cause, and if so, what should the remedy be?" The arbitrator found that Maciel was unjustly terminated, and in response to the second part of the issue presented, he fashioned an appropriate remedy from the list of disciplinary measures enumerated in the contract. The arbitrator simply answered the question presented under the authority granted him by the contractual grievance procedures, and he chose a penalty from those listed in the disciplinary-enforcement provision of the agreement. He neither exceeded his powers nor chose an unauthorized remedy. These actions clearly comply with "the contract and the law of the shop and consequently merit[] judicial approval." Council 94, AFSCME, AFL-CIO v. State, 475 A.2d 200, 203 (R.I. 1984).
Turning now to the arbitrator's analysis, we note his determination that "[t]he actions of the grievant warrant significant discipline, but less than termination." In reaching this conclusion, he considered Maciel's past performance, her state of mind during the events at issue, and the circumstances that surrounded those events.
In the course of her twenty-two-year nursing career, Maciel had never before been disciplined. During the alleged assaults she exhibited no signs of unlawful intent. The patient she removed to the courtyard was hostile, confused, and intractable. In reference to such situations the arbitrator remarked that "there are times when a nurse or attendant must physically restrain, assist, maneuver, deter or place a patient in a desired position." Relying on these findings, the arbitrator reasoned that Maciel's March 1, 1981 misbehavior could have been caused by a momentary lapse of professional judgment. He further found that the nurse's failure to report immediately the "minor * * * scratch or abrasion" on her patient's leg did not warrant disciplinary action. Maciel treated the injury shortly after she attended to the other patients, and she fully disclosed the episode to investigators when she was later questioned.
In substituting a three-month suspension for the discharge, the arbitrator considered the negative impact that termination would have on Maciel's prospects for employment in the nursing profession.[2] This consideration, *121 together with the mitigating factors already discussed and the absence of any pattern of patient abuse by Maciel, led the arbitrator to conclude that dismissal was too harsh a punishment for the violations committed. Although his decision was clearly based on a "passably plausible," if not logical, interpretation of the contract and the law of the shop, Jacinto v. Egan, 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978), my colleagues believe that "the arbitrator's decision was a manifest disregard of the contract provisions and the arbitrator exceeded his powers in violation of § 29-9-18."
In Jacinto, we stated that even "awards premised on `clearly erroneous' interpretations of the contract have been affirmed when the result was rationally based upon the contract." 120 R.I. at 912, 391 A.2d at 1176.
In Rhode Island Council 94 v. State, 456 A.2d at 775, we ruled that absent complete irrationality, an arbitrator's award is not subject to judicial review. And in Council 94, AFSCME, AFL-CIO, we decided that "judicial reversal of an arbitrator's award solely on the ground of a reviewing court's disagreement with his construction of the contract is prohibited." 475 A.2d at 203 (citing Rhode Island Council 94 v. State, 456 A.2d at 775). Having compared the record submitted in this case with the opinion of my colleagues, I find it apparent that the members of the majority have ignored each of these well-established principles in fashioning their own remedy to this dispute.
Our previous decisions in this area of the law are predicated on the strong public policy that favors the finality of arbitration awards. Belanger v. Matteson, 115 R.I. 332, 346 A.2d 124 (1975), cert. denied, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). Disagreement with this position should be voiced "at the statehouse and not the courthouse." Jacinto, 120 R.I. at 917, 391 A.2d at 1178. Reversal of arbitration rulings solely to effect different results contravenes this policy, circumvents our established standards of review, and represents an unprecedented deviation from our treatment of grievance disputes arising from collective-bargaining agreements. I sincerely believe that my colleagues' affirmation of the trial justice's discharge mandate will eventually make for a "judicial open season" wherein arbitrator's awards will be fair game for any member of the judiciary who finds any degree of fault with the arbitrator's disposition of any particular controversy. For these reasons I respectfully dissent.
NOTES
[1] Article XXXI, section 31.1, of the collective-bargaining agreement states, "If a grievance is not settled under article XXX, such grievance shall, at the request of the union or the State, be referred to the American Arbitration Association in accordance with its rules then obtaining."
[2] In Council 94, AFSCME, AFL-CIO v. State, 475 A.2d 200, 201 (R.I. 1984), the arbitrator observed that a discharge for good cause is tantamount to "economic capital punishment."