[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is a motion to vacate, modify or correct an arbitrator's decision and award filed by the Rhode Island Probation and Parole Association (hereinafter "union") and a petition to confirm that decision and award filed by the State of Rhode Island (hereinafter "state"). Jurisdiction of this Court is by virtue of G.L. 1956 (1986 Re-enactment) § 28-9-5. For reasons subsequently set forth, the Court denies union's motion to vacate and confirms state's motion to confirm.
FACTUAL BACKGROUND
Although voluminous, the facts giving rise to the case at bar are not in dispute. At all times relevant hereto, the state and union were parties to a collective bargaining agreement. Article 27.1 of that agreement provided:
 If a grievance is not settled under [the contract's grievance procedures], such grievance shall, at request of [either party], be referred to the American Arbitration Association in accordance with its rules then obtaining (emphasis added).
Also in effect during all times relevant hereto was the "merit-system law," G.L. 1956 (1986 Reenactment) §§ 36-4-1 et seq. The merit-system law, by its own terms, was applicable to the case at bar.
Union is comprised of three groups of employees: "supervisory," "professional," and "clerical." Each group was separately certified by the State Labor Relations Board as part of the union.
In 1986, the state announced that two "supervisory" positions were vacant. It then examined interested applicants and, pursuant to the terms of the merit-system law, §§ 36-4-1 et seq., it promulgated an "employment list" and a "promotion list". Pursuant to § 36-4-19, the military veterans on the employment list received "veteran's credits," thereby enhancing their respective positions vis-a-vis non-veterans. Credits were not granted for veterans listed on the promotional list. The state chose two veterans on the employment list to fill the vacancies. The two individuals, Mr. Shanley and Mr. White, were eligible for promotion only because they had received "veteran's credits" under § 36-4-19 which enhanced their respective positions on the employment list. The union objected, contending that § 36-4-19 of the merit-system laws allowed use of "veteran's credits" only for original hiring, and precluded their use for subsequent promotion.
The state, however, felt that under the terms of the collective bargaining agreement it was bound to utilize the employment list. Article 13.3 of the agreement provided that "every effort will be made to fill vacancies from within the bargaining unit." Award of Arbitrator Theodore H. O'Brien, p. 3. The state contended that the "supervisory," "professional," and "clerical" employee groups constituted separate bargaining units. Messrs. Shanley and White were the only two eligible "supervisory" personnel on either the employment or promotion list. Thus, the state felt compelled to consider only Messrs. Shanley and White to fill the "supervisory" vacancies, and, as a result, it felt compelled to use the employment list.
Three "professional" employees (hereinafter the "grievants") objected and the union instituted a grievance proceeding on their behalf. The state denied the grievance and union submitted a demand for arbitration.
On January 15, 1988, after a hearing, arbitrator Theodore H. O'Brien issued a decision and award. In reaching his decision, he addressed issues regarding the effect of the collective bargaining agreement; he did not consider the merit system laws. Arbitrator O'Brien found that "supervisory" and "professional" employees were part of the same bargaining unit. Based on this finding, he held that the state had violated the terms of the collective bargaining agreement by not considering eligible "professional" employees when filling the two vacancies. He then directed the state to reconsider the appointments in light of this finding. In response, the state then set up personal interviews for each of the original applicants, including the grievants. The grievants refused to participate.
The union, on April 8, 1988, then filed in this court P.C. 88-1705, a Motion to Confirm and for Declaratory Relief. The union sought to confirm arbitrator O'Brien's award, and also wanted this court to issue a declaratory judgment that the merit-system laws precluded the use of "employment lists" for promotional purposes.
On April 22, 1988, this court, Almeida, J., remanded the case back to arbitrator O'Brien "for the purpose of clarification as to remedy." Pursuant to the remand order, the arbitrator held a hearing on October 28, 1988. He then issued an "Interpretation of Award" dated December 27, 1988, in which he held that the state, by attempting to interview and consider all of the original applicants, had complied with his original award. (Interpretation of Award, p. 3.)
Thereafter, on March 27, 1989, the union brought a motion to vacate in P.C. 89-1544. The state then brought a motion to confirm in that same action on April 12, 1989. P.C. 89-1544 was then consolidated with P.C. 88-1705 (union's original Motion to Confirm and for Declaratory Relief) on May 17, 1989.
This consolidated action which is now before the Court raises the following issues: 1) whether the procedural provisions in §§28-9-1 et seq. (review of arbitrator proceedings) bar the union'sMarch 27, 1989 motion to vacate and mandate confirmation of the union's April 8, 1988 Motion to Confirm; 2) whether there are adequate substantive grounds to vacate the arbitrator's decision and award; and 3) whether the union is entitled to declaratory relief.
PROCEDURAL ISSUES
The procedural issues before this Court can be properly resolved by reference to G.L. 1956 §§ 28-9-1 et seq. Among the provisions setting out the applicable procedural requirements is G.L. 1956 § 28-9-21, which requires that notice of a motion to vacate, modify or correct an arbitrator's award be served upon the adverse party within three months after the award is filed or delivered. Method of service must be as "prescribed by law for service of notice upon an attorney in an action." G.L. 1956 (1988 Reenactment) § 28-9-21. An attorney in an action may be properly served by mail; service by mail is complete upon mailing. R.C.P. 5(b).
A petition seeking confirmation of an arbitrator's award may be brought by any party within one year after the award is made. G.L. 1956 § 28-9-17. A timely motion to confirm must be granted unless the underlying award is vacated, modified or corrected.Id.
Although there is no case law bearing directly on the effect of § 28-9-17 and § 28-9-21, there are two rules of law which will guide this Court in its interpretation. First, statutes should not be construed to achieve meaningless or absurd results.Berthiaume v. School Comm. of City of Woonsocket, 121 R.I. 243, 247, 397 A.2d 889, 892 (R.I. 1979). Second, courts should be extremely wary of substituting their own decision for the decision of an arbitrator: See, e.g. Jacinto v. Egan,120 R.I. 907, 911, 391 A.2d 1173, 1175 (1978). Where an arbitrator has issued an ambiguous award, this rule of law requires a reviewing court to remand it for clarification. H.E. Sargent v. Town ofMillinochet, 478 A.2d 683, 686 (Me. 1984).
Although the union's March 22, 1989 Motion to Vacate was mailed within three months after the arbitrator'sclarification, the state argues it was untimely under § 28-9-21
because it was made fourteen months after the arbitrator'soriginal opinion and award. The state also makes the subsidiary argument that, since there was not a timely motion to vacate, modify or correct the award, § 28-9-17 requires that the union's original motion to confirm be granted.
The state's position regarding the effect of § 28-9-21, if adopted as rule of law, would encourage — if not require
— diligent parties seeking to preserve their right to judicial review to file conflicting motions where an arbitrator has issued an ambiguous award. This would burden the courts with unnecessary motions. The state's position, therefore, would clearly lead to absurd results.
Furthermore, the state's position regarding § 28-9-17 would undermine the rule of law precluding courts from substituting their own judgments for the judgments of arbitrators. This undermining effect can best be demonstrated by reference to the corollary to the anti-substitution rule: the rule that ambiguous arbitration awards should be remanded for clarification. The state's position, in cases such as this, would create a risk that individual courts would enforce ambiguous awards without remanding, thereby necessitating that the court "fill in the blanks." And, even if that court properly avoided this risk, the state's position would require a court to invoke its enforcement authority before ascertaining exactly what it would be enforcing. This, too, is an absurd result.
This Court, therefore, holds that the union's Motion to Vacate, brought within three months of the arbitrator'sclarification of his award, was timely under G.L. 1956 (1986 Reenactment) § 28-9-21, and that G.L. 1956 (1986 Reenactment)28-9-17 therefore does not mandate confirmation of the union's original motion to confirm.
SUBSTANTIVE ISSUES
General Laws 1956 (1986 Reenactment) § 28-9-18 sets out the substantive standards of review which are controlling in this case. Section 28-9-18 permits this Court to vacate an arbitration award in three specific instances:
 (1) when the award was procured by fraud
 (2) where the arbitrator or arbitrators exceeded powers, or so imperfectly executed them, that a mutual final and definite award upon the subject matter was not made
 (3) if there was no valid submission or contract and the objection has been raised under the conditions set forth in § 28-9-13.
The Rhode Island courts have forged certain cardinal rules of law implementing the standards set out in § 28-9-18. Unless a reviewing court can find a "manifest disregard of the contractual provisions, or a completely irrational result, the courts have no authority to vacate [an] arbitrator's award." Jacinto, 120 R.I. at 914, 391 A.2d at 1176. That an arbitrator misconstrues a collective bargaining agreement or the law pertaining thereto is not necessarily grounds to vacate his or her award. Id, 120 R.I. at 911, 391 A.2d at 1175. A reviewing court's proper role is to determine whether the arbitrator considered the proper sources when fashioning the award, not whether he or she resolved the grievance properly. Rhode Island Council 94 v. State,456 A.2d 771, 773 (R.I. 1983).
When developing these rules of law, the courts were mindful of the strong public policy favoring arbitration. See, Belangerv. Matteson, 115 R.I. 332, 355-356, 346 A.2d 124, 138 (1975). The policy favoring arbitration derives from the idea that "parties to a collective bargaining agreement containing a binding arbitration clause [should] receive the benefit of [their] bargain — binding arbitration on contract disputes." (Emphasis in original.) Local Union 59 Int'l. Bhd. of ElectricalWorkers, AFL-CIO v. Green Corp., 725 F.2d 264, 268 (5th Cir. 1984) (discussing the U.S. Supreme Court's seminal decisions regarding arbitration in the "Steelworker's Trilogy").
The union argues that the arbitrator's award should be vacated because of its conflict with the merit-system laws. More precisely, the union argues that the arbitrator was incorrect in considering and applying contractual provisions which contravened the merit-system laws.
With respect to a conflict between the merit-system laws and a collective bargaining agreement with a binding arbitration clause, R.I. Council 94 v. State, 456 A.2d 771 (R.I. 1983), is controlling. That case, like this one, involved a conflict between the merit-system laws and an arbitration award rendered during binding arbitration. In that case, the Rhode Island Supreme Court held that the Legislature intended that the merit-system laws not be applicable to cases involving binding arbitration. Rhode Island Council, 456 A.2d at 774. That court reached its conclusion after considering the legislative history of the merit-system laws. It found that the original enactment of the merit-system laws, (G.L. 1956 § 36-11-5, as amended by P.L. 1958, Ch. 178, § 5), which provided that the merit-system laws "when exclusive" should be followed although the matter involved might be arbitrable, has been specifically repealed by P.L. 1972, ch. 277, § 2. The court concluded that "[i]t is clear . . . that the legislature did not intend to impose the merit system upon parties submitting to binding arbitration. Rhode IslandCouncil, 456 A.2d at 774. In the instant case, the parties had submitted to binding arbitration thus rendering the merit-system laws inapplicable. Accordingly, the arbitrator considered the proper sources when fashioning his award and union's motion to vacate must be denied.
DECLARATORY JUDGMENT
The union has also made a prayer for declaratory relief pursuant to G.L. 1956 (1970 Reenactment) §§ 9-30-1 et seq. (the "Uniform Declaratory Judgments Act") regarding the construction and effect of the merit-system laws on the case at bar. The Superior Court may, in its discretion, decline to grant relief under Uniform Declaratory Judgments Act on the ground that it has no jurisdiction to issue advisory opinions. Berberian v.Travisoro, 114 R.I. 269, 274, 332 A.2d 121, 124 (1975). Because the merit-system laws are not applicable to this case, this Court's ruling on their construction and effect would be advisory. Therefore, union's Motion for Declaratory Relief is hereby denied.
CONCLUSION
For the reasons contained herein, this Court rules that union's motion to vacate was both timely and properly before this Court. As this Court finds no manifest disregard for the applicable contractual provisions or irrational result, and the arbitrator considered the proper sources when fashioning his award, union's motion to vacate is denied. Union's motion for declaratory relief is also denied.
Counsel shall prepare the appropriate judgment for entry.