DECISION
Pursuant to G.L. 1956 (1995 Reenactment) § 28-9-18, plaintiff requests that this Court vacate an arbitrator's decision to reinstate Maurice Howie, a former employee of the Rhode Island Training School, with back pay and benefits. The Training School is under the direction of the State of Rhode Island, Department of Children, Youth and Families (DCYF). Defendants, including the union which represents Mr. Howie, oppose the motion, and request that pursuant to § 28-9-14 the award be confirmed. On April 20, 1994, this Court granted a motion to stay the arbitrator's award pending the disposition of the State's petition.
I.
The parties do not dispute the material facts, summarized as follows:
The State and the Union entered into a Collective Bargaining Agreement (hereinafter the Agreement) in 1989 which governed conditions of employment for employees of the Training School, including Mr. Howie, at all material times.
DCYF hired Maurice Howie as a Youth Home Life Supervisor at the Training School on July 29, 1990. It is undisputed that Mr. Howie maintained a good employment record during the entire term of his employment. On February 27, 1991, Mr. Howie was convicted of domestic assault, for which he received one year of probation and a one year suspended sentence. Based on the Certification of Child Care Personnel Act, G.L. 1956 (1990 Reenactment). §§40-13.2-1 to -8, and DCYF Regulations 806 and 232, promulgated in accordance with the statute, DCYF determined that there existed just cause to terminate Mr. Howie's employment. Following an administrative hearing, as provided for in the Agreement, his termination was effective March 6, 1992.
The Union filed a demand for arbitration, also as provided for in the Agreement. On November 17, 1993, the arbitrator concluded that Mr. Howie was terminated without just cause because neither the Certification of Child Care Personnel Act nor DCYF regulations applied to Mr. Howie as a then current employee. He ordered that Mr. Howie be reinstated to his position at the Training School and awarded him back pay and benefits.
II.
The issue presented in this case is whether the arbitrator exceeded his authority in determining that DCYF did not have just cause to fire Mr. Howie.
A.
Plaintiff first argues that the arbitrator, in overruling its decision regarding termination of an employee, disregarded the employer's exclusive right to discharge an employee. They contend that "disqualifying information" consisting of Mr. Howie's conviction for domestic assault, as recognized in the addendum toDCYF Regulation 806, warrants the termination of Mr. Howie from the Training School. Plaintiff concludes that the arbitrator's award thus fails to draw its essence from the Agreement.
Article 4.1 of the Agreement gives the State all rights to "manage, direct or supervise the operations of the State and the employees," except as specifically limited by the provisions of the Agreement. This includes the right to discharge employees in a manner consistent with applicable laws and regulations. Article 24, Section 2 of the Agreement provides that the State "shall not discharge or suspend an employee without just cause." Article 25 states that in cases of dismissal, the aggrieved and/or the Union may submit the matter to arbitration. Article 26 mandates that "[t]he decision of the arbitrator shall be final and binding upon the parties."
The employer's exclusive right to discharge an employee is subject to the limitations specified in the Agreement itself. Articles 24, 25, and 26, which give a party aggrieved by a termination the right to a hearing before an arbitrator, is just such a limitation. The parties have agreed that the arbitrator's decision in such a matter will be final and binding.
Although defendants do not argue that this case is comparable to State v. National Association of Government Employees LocalNo. 79 ("NAGE"), 544 A.2d 117 (R.I. 1988), or Rhode IslandLaborers District Council v. State, 592 A.2d 144 (R.I. 1991), theNAGE doctrine, as defined and refined in those cases, is inapplicable for two reasons. First, P.L. 1990, Ch. 378, § 1
which amended § 28-9-18 may have repealed the NAGE doctrine. Second, NAGE applies specifically to an employer's disciplinary action taken against an employee for misconduct on the job. This case involves the employer's grounds for terminating Mr. Howie based on off-duty misconduct.
A long line of cases has limited the authority of courts to overturn an arbitrator's decision. Where the parties to a collective bargaining agreement negotiate an employee's right to appeal his termination to an arbitrator, they are bound to accept the arbitrator's judgment, as long as the arbitration award does not violate explicit public policy. The United States Supreme Court has refused to review the merits of an arbitration award so long as it draws its essence from the agreement. UnitedSteelworkers of America v. Enterprise Wheels and Car Corp.,363 U.S. 593, 596-97, 80 S.Ct. 1358, 1360-1361 (1960). Rhode IslandCouncil 94 v. State, 456 A.2d 771, 773 (R.I. 1983) confirms that a court has limited authority to overturn an arbitrator's decision and should not reconsider the arbitrator's interpretation of contractual provisions.
The two cases cited above both involve an arbitrator's reinstatement of employees terminated from employment. An arbitrator has the authority to review an employer's determination of just cause for such termination as long as he or she bases the award on a plausible interpretation of the applicable collective bargaining agreement. United Steelworkersof America v. Enterprise Wheels and Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360-1361 (1960). Rhode Island Council 94 v.State, 456 A.2d 771, 773 (R.I. 1983). It is clear that the Agreement negotiated by the parties gives the arbitrator the authority to determine whether the employer's stated reasons for discharging Mr. Howie in fact constitute just cause.
B.
Plaintiff next argues that Mr. Howie is disqualified for employment at the Training School under §§ 40-13.2-1 to -8, andDCYF Regulations 806 and 232. The State posits that both the wording and intent of the statute and regulations prohibit an employee who has committed any of various criminal offenses, including domestic assault, from working in a child care facility.
An arbitrator could reasonably find that the plain language of §§ 40-13.2-1 to -8 requires that the statute applies only toapplicants for employment in child care facilities and the Training School. Had the General Assembly wanted to broaden the ambit of the statute, it would have been an easy and logical step to require criminal checks and impose disqualification on current employees as well as prospective employees.
Similarly, DCYF Regulation 806. Section I requires criminal record checks for those who provide child care services "not only on prospective employees but also volunteers, and consultants. . . ." In a context specifically limited to home day care providers, the regulation does refer to employees and potential employees. Regulation 232 requires criminal record checks onprospective employees, volunteers, and consultants of the Training School. Section B allows the employer to hire an applicant for a provisional period of not more than ninety days while awaiting results of the criminal check. The employer may terminate the employee if the results show disqualifying information. Both of these regulations broaden the category of prospective employee to cover volunteers and consultants. The latter also includes provisional employees. Regulation 806, PartII, Section B(b), additionally, provides for an appeal procedure wherein:
 If the applicant has demonstrated a record of excellence in child care, the Department Administration Hearing Officer will overturn the rejection based on disqualifying information. . . .
Regulation 232 contains essentially the same language in Part C.Section 4(b).
Had the General Assembly and the Director wished to include current employees within the scope of these regulations, they could have done so explicitly. It is clear to this Court that the arbitrator plausibly reasoned that neither the statute nor the regulations cover Mr. Howie as a current employee. Even if the regulations did cover current employees, the arbitrator could have applied the reasoning provided in the regulations to overturn Mr. Howie's dismissal through his demonstrated record as an excellent employee at the Training School. If the employer has discretion in determining "just cause" for dismissal of an employee before unqualified full employment on the basis of disqualifying information, the arbitrator may by the same token in his or her discretion conclude that just cause does not exist under these regulations as to an employee subject to a collective bargaining agreement.
A court may not vacate an arbitrator's award unless it violates a clear or explicit policy of the state. There is no indication in the statute or regulations, which formed the basis for Mr. Howie's termination, that the State has an explicit policy to disqualify a person convicted of one of the listed disqualifying crimes from continuing ongoing employment at the Training School. Given the language in the above statute and regulations, which includes some categories of people working closely with children, but which omits reference to other obvious categories, this Court concludes that the General Assembly did not choose these particular vehicles to protect children from current employees, who are convicted of certain crimes and working under Agreements to which the State is a party.
An arbitrator has wide discretion to interpret the law while making findings of fact and law under such a contract. Although a court may not enforce a contract which is contrary to public policy, the policy "must be well defined and dominant, and is to be ascertained `by reference to the laws and legal precedents and not from general considerations of supposed public interests.'"W.R. Grace and Co. v. Rubber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) (quoting Muschany v.United States, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed 744 (1945)). United Paperworkers Intern Union v. Misco, Inc.,484 U.S. 29, 43, 108 S.Ct. 364, 373-74, 98 L.Ed.2d 286 (1987), confirms that "the violation of such a policy must be clearly shown if an award is not to be enforced." As stated in Vose v.Rhode Island Brotherhood of Correctional Officers, 587 A.2d 913, 914 (R.I. 1991):
 If the state is afraid . . . that an arbitrator would `interpret Rhode Island State law in a fashion which could run contrary to public policy,' then we suggest that it not agree to arbitrate such issues.
C.
The State argues that Vose, supra, supports its position that the arbitrator's position would effectively allow the state to bargain away its statutory duty to protect children under its care from employees convicted of certain crimes.
This award does not preclude the likelihood that a current employee guilty of some criminal offenses may be terminated for just cause on the basis of the criminal misconduct apart from the conviction, if that misconduct relates to DCYF's legal charge to protect certain children. The Agreement gives the State wide latitude to determine what off-duty misconduct constitutes just cause to dismiss an employee. The basis for the dismissal, however, will be subject to an arbitrator's interpretation of applicable provisions within the contract and of "the common law of the workplace." In this case, the arbitrator remained within his authority in interpreting the contract to find that the State did not have just cause to terminate Mr. Howie, because of his conviction, standing along, without reference to the facts underlying his conviction. As the arbitrator commented in his award:
 It would be a simple matter for the Department to promulgate rules or policies to place employees on notice that it regards certain off-duty criminal activities as grounds for termination. (Of course, the Union would still be able to challenge the specific determination on the grounds that it is not consistent with just cause.) An employee would be able to consider such a departmental determination when he decides how to respond to criminal charges. The employee would then be on notice that a conviction might jeopardize his career and that could be considered in any plea bargaining arrangement.
III.
The plaintiff's motion to vacate the arbitrator's award is denied. The defendant's motion to confirm the award is granted. The defendant will present an appropriate judgment for entry on notice to the plaintiff.