DECISION
This matter is before the court on defendant's, Rhode Island Council 94, AFSCME, Local 911, (Union), motion to confirm, and plaintiff's, City of Newport, motion to vacate and stay the February 16, 1999 arbitration award issued by Arbitrator Kathrine B. Hogan. This Court has jurisdiction pursuant to Rhode Island General Laws § 28-9-18.
The instant controversy arises from a collective bargaining agreement (CBA) to which both the Union and Newport are parties.[1] At the heart of this dispute is this simple question: under the terms of article XIX of the CBA, what rate of pay is Newport obligated to issue to employees who are on leave due to injuries suffered while "on the job?"
Article XIX of the CBA states that "leave and medical expenses for injury in the line of duty shall be granted as provided for in Title Three of the City Code Ordinances." In December 1995, when the parties agreed to the language of Article 19, Title Three of the City Code of Ordinances at section 3.28.150 read, "Leave for absence with pay shall be granted. . . to permanent employees who became incapacitated as a result of injury or occupational disease incurred through no misconduct of their own while during actual performance of duty." (emphasis added) Since at least 1984, employees who were out on injured-on-duty status were paid 100% of their full salary.
In April, 1996, the City amended Title Three, section 3.28.150, to specifically incorporate the Rhode Island Workers' Compensation Act stating, "leave of absence with compensation, as provided by the provisions of Chapters 29 through 38, include Title 28 of the General Laws of Rhode Island, 1956, as amended, known as the "Worker's Compensation Act," shall be granted." The Workers' Compensation Act provides for 66 2/3 percent of a worker's pay. After this alteration in Title Three, workers who previously were receiving 100% of their salary while they were on leave were subject to a reduction in pay according to the Act. This reduction triggered the instant controversy and the matter was submitted to arbitration in November 1998 before arbitrator Kathrine B. Hogan.
The City argued that the rate of pay for on-the-job injuries should be governed by the City's Ordinances. The Union agrees. The controversy stems from which ordinance is applicable, the one that was in effect at the time the contract was negotiated or the amendment. The City takes the position that there is no language in the CBA which prevents the City from amending its policy and ordinance to provide for such leave in accordance with the Act. Therefore, the City argues, the change in the Ordinance to include the Workers' Compensation Act is valid and should supersede the previous terms of Title Three as they apply to Article XIX. The Union maintains that while the City is authorized to alter the Ordinances as it sees fit, it must honor the terms of the CBA until the end of the contract period. The terms as they were negotiated for the instant contract period did not include the Act. Therefore, the Union alleges that the City violated Article XIX of the agreement when it reduced the salary of injured employees from full pay to the rate under the Workers' Compensation Act.[2]
After hearing both parties, Hogan found that the City violated the Collective Bargaining Agreement when it altered the rate of pay for members of the bargaining unit who are compensated while on leave due to on-the-job injury. She specifically found that the language of Title Three was,
"susceptible to more than one meaning and application thereof and meets the test of ambiguous contract language. The city has implemented this provision in two different ways, first by providing 100% pay to employees who are injured on the job and also by a reduction in pay to 66 2/3% of pay in accordance with the Act. There is no clear language mandating either 100% of pay or 66 2/3 % of pay. In order to give proper force and effect to ambiguous contract language, consideration must be given to the actions of the parties to determine their intent in reaching agreement on this language."
There is a strong public policy interest in favor of the finality of arbitration awards. Aetna Casualty Life v. Grabbert, 590 A.2d 88 (R.I. 1991). The strength of this interest is reflected in the narrow grounds available to the parties to vacate an award. Id. The Rhode Island Supreme Court has "consistently maintained that an award may be vacated only if it is "irrational" or "manifestly disregards the applicable contract provisions," or it falls within one of the four statutorily prescribed grounds in § 10-3-12.[3] Id, citing State v. National Association of Governmental Employees Local No. 79,544 A.2d 117 (R.I. 1988). "As long as the award `draws its essence' from the contract and is based upon a `passably plausible' interpretation of the contract, it is within the arbitrator's authority and [the court's] review must end." Jacinto v. Egan,120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978) (quoting United Steelworkers of America v. Enterprise Wheel Car Corp.,363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960)). In Warner v. Aetna Casualty and Surety Company, 624 A.2d 304 (R.I. 1993), the Rhode Island Supreme Court stated that "absent a manifest disregard of the contractual provisions, or a completely irrational result, the courts have no authority to vacate the arbitrator's award." Id. at 305, quoting State v. National Association of Government Employees Local No. 79, 544 A.2d 117, 119 (R.I. 1988).
In the case presently at issue, the City asserts that "the arbitrator in this matter did manifestly disregard pertinent contractual provisions and, in fact, exceeded her authority by essentially rewriting the collective bargaining agreement between the parties ignoring clear and unambiguous contract language to the contrary." Plaintiff's Memorandum in Support of its Motion to Vacate Arbitration Award and for Stay, 1. Specifically, the City challenges the arbitrator's consideration of past practice in evaluating the parties intent behind this agreement. The City argues that this grievance is not arbitrable because past practice cannot be the basis of arbitration unless the contract includes a past practice provision.[4] The arbitrator decided that the heart of this dispute was the meaning of Articles Three and XIX. In deciding the intent of the parties, she looked to their past practice. The Court agrees with the arbitrator's assessment and characterization of this case. Although the past practices are not the basis for the arbitration, they aid in determining the parties intent.
A past practice is a consistent prior course of conduct between the parties to a collective bargaining agreement that may assist the arbitrator in determining the parties' intent. RI Court Reporters Alliance, 591 A.2d 378 (R.I.). Evidence of mutual intent to adopt the course of conduct must be shown in order to sustain the practice. Five indices that assist in determining this mutual acceptance:
1) clarity and consistency throughout the course of conduct; 2) longevity and repetition creating a consistent pattern of behavior; 3) acceptance of the practice by both parties; 4) mutuality in the inception or application of the practice and; 5) consideration of the underlying circumstances giving rise to the practice. Citing N.H. Broadcasting Co., 67 Lab. Arb. (BNA) 989, 991-92 (1976).
The record seems to contain evidence satisfying most, if not all, of these five categories.
Having found the arbitrator's decision to hear the matter to be within her power, this Court now looks to the terms of contract in order to evaluate the award. To this Court, the terms seem clear. Leave with pay means "full pay" in accordance with the manner the term is used throughout the agreement. For example, Article 7(d) states, "each Public Safety Dispatcher shall be entitled to two (2) stress days off with pay per contract years." Articles 11-13 address sick, holiday and vacation pay. Article 14 states, "in the event of death of a member of the family of an employee, the City will grant reasonable time off without loss of pay." In all of these situations, the rate of pay is 100% of the workers salary.
Where the pay rate is to be something other than the workers regular rate, the agreement explicitly states the difference. Article 7.2(b)-(d) states that time and one-half shall be paid to employees working in excess of their regular hours. Article 7.4 allows for a shift differential of thirty-six cents in addition to the regularly hourly rate to those employees who work midnight to eight or four to midnight. Those employees taking maternity leave do so "without pay or benefits." Article 16.1.
The Union, on behalf of its members, negotiated a contract which provided for full pay for workers injured while on-the-job. While the City may have the authority to amend its ordinances, it may not apply those amendments retroactively to previously negotiated terms already in effect. If this Court allowed such action it would eliminate any inducement for parties to enter into such agreements. CBAs are intended to eliminate or reduce labor disputes and as long as their terms are not void or illegal they will be upheld.
For the aforementioned reasons, the decision of the arbitrator is confirmed. Counsel shall prepare the appropriate order.
[1] Article 26(3)(b) of this agreement states "if a grievance which involves the interpretation of application of the terms of this agreement is not resolved . . . it may be submitted to arbitration by either party upon written notice to the other within thirty (30) days of the decision. . . . The arbitrator shall have no power to add to, delete from, or modify any of the terms or provisions of this agreement."
[2] Before she could reach the merits of the case, Ms. Hogan was required to first decide whether the matter was arbitrable. Ms. Hogan concluded that since the confusion and conflict arouse from a term of the contractural agreement, the grievance was arbitrable.
[3] § 10-3-12. Grounds for vacating award
In any of the following cases, the court must make an order vacating the award upon the application of any party to the arbitration:
(1) Where the award was procured by corruption, fraud or undue means.
(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. the contractual agreement, the grievance was arbitrable.
[4] The Supreme Court has ruled that the contract must contain a past practice provision or a savings clause that evidences the mutual intent of the parties to establish these benefits as enforceable past practices. Otherwise these past practices cannot serve as the basis for arbitration. RI Court Reporters Alliance, 591 A.2d 378 (R.I.).